#28393-a-SRJ
**2019 S.D. 1**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                          Plaintiff and Appellee,

v.

CHRISTIAN A. THOMAS,                          Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
AURORA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE PATRICK T. SMITH
Judge

\* \* \* \*

DOUGLAS N. PAPENDICK of
Stiles, Papendick & Kiner                          Attorneys for defendant
Mitchell, South Dakota                          and appellant.


MARTY J. JACKLEY
Attorney General

JOHN M. STROHMAN
Assistant Attorney General                          Attorneys for plaintiff
Pierre, South Dakota                          and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS ON
NOVEMBER 12, 2018
OPINION FILED **01/02/2019**

#28393

JENSEN, Justice

[¶1.]　　　Christian Ashley Thomas was convicted by an Aurora County jury of multiple sex crimes involving two minor victims under the age of sixteen.  Thomas appeals, arguing the circuit court erred in admitting certain other acts evidence.  He also argues the circuit court abused its discretion by denying his motion for a mistrial after he learned during the trial that the bailiff had recently been employed by the State's Attorney.  We affirm.

**Facts and Procedural History**

[¶2.]　　　Thomas was initially charged in 2015 with multiple counts of fourth degree rape, sexual contact with a child, and sexual exploitation of a minor.  The charges were alleged to have involved his niece by marriage, K.V.  Thomas's wife, Beth Thomas (Beth), is a sister to K.V.'s mother.

[¶3.]　　　The State continued to investigate the case after the initial charges were filed.  In January 2016, Thomas was charged by superseding indictment with additional sex offenses involving K.V., as well as sex offenses involving K.V.'s friend, B.B.  In February 2017, the State charged Thomas with three counts of fourth degree rape, six counts of sexual contact with a child, five counts of sexual exploitation of a minor, three counts of aiding and abetting fourth degree rape, and one count of aiding and abetting sexual contact with a child for alleged acts committed against K.V.  Thomas also faced four counts of fourth degree rape and two counts of sexual contact with a child for alleged acts committed against B.B., and two counts of possession of child pornography.  The crimes were alleged to have occurred between 2008 and 2014.

[¶4.]        Thomas pleaded not guilty to all the charges and the case proceeded to trial in May 2017.  The State presented evidence showing that K.V. began spending significant time at the Thomas household when she was twelve years old.  She babysat Thomas's three children, and occasionally lived with the Thomas family.  During this time, Thomas started making sexual advances toward K.V.  He requested that K.V. show him her breasts and asked to touch K.V.'s breasts.  The sexual contact escalated when Thomas drove K.V. back to her home one night after babysitting.  During the car ride, Thomas pulled over and asked K.V. to go into the back seat.  He performed oral sex on her and had K.V. perform oral sex on him.

[¶5.]        Following the incident in Thomas's vehicle, Thomas invited his friend, Larry Unruh, to his house and instructed K.V. to show Unruh her breasts.  Thomas then made his home available for Unruh and K.V. to have sex.  On some occasions, Thomas, Unruh, and K.V. participated in sex acts together.  On one occasion, K.V. was part of a foursome at Thomas's home that involved her, Thomas, Unruh, and Beth.  K.V. indicated during the investigation and in her testimony at trial that her sexual interaction with Thomas and Unruh ended before she turned sixteen on November 15, 2012, although she could not easily recall when the events occurred.[1]

[¶6.]        The State also presented evidence showing that Thomas engaged B.B. in sexual conduct at his home.  These acts included several occasions when Thomas

---

1.        Establishing a timeline was important because there was some question whether K.V. was under sixteen when the sexual abuse occurred.  The State charged many of the counts in the alternative depending on whether the jury found that K.V. was fifteen or sixteen at the time of the alleged incidents, e.g. sexual exploitation of a minor was charged in the alternative to sexual contact with a child under sixteen.  There was not a similar concern regarding the timeline for the allegations involving B.B.

touched B.B.'s genitals, performed oral sex on her, or had sexual intercourse with her.

[¶7.] Prior to trial, the State filed a notice of intent to introduce evidence of other acts pursuant to SDCL 19-19-404(b). The State sought the admission of several acts, two of which Thomas challenges on appeal: 1) internet searches that used terms associated with an interest in younger females; and 2) Thomas's act of piercing his penis.[2]

### *Internet Search Evidence*

[¶8.] The State argued for the admission of several searches conducted on pornographic websites recovered from Thomas's computer hard drives. These searches used terms such as "teen," "young," "way too young," and "jailbait." The State argued these searches directly contradicted Thomas's interview with law enforcement in which he stated he preferred older women. The State sought admission of another set of search terms recovered from the hard drives, including "family orgy," "family sex," "taboo," and "incest." The State argued these terms were relevant to one of the charged incidents that involved group sex activity with Beth and K.V. The State argued that all the searches were relevant to show Thomas's motive, intent, and plan to commit the crimes.

---

2. The State also sought admission of Thomas's "participation in other group sex activities involving adults to show motive, intent, and plan" and "Defendant's use of a 'kill disc' program to show his opportunity to delete photos or videos of his criminal acts with the victims." The circuit court allowed the kill disc program evidence, but excluded the evidence of other group sex activities with consenting adults, finding that its slight relevance was substantially outweighed by the potential of unfair prejudice.

#28393

[¶9.]     Thomas argued that the evidence was irrelevant because the "internet searches were strictly made from mainstream adult pornographic websites and not from any illegal websites. The persons shown on these various websites were of legal age and most likely were role playing." Thomas also argued that even if the evidence was probative, its value was "substantially outweighed by the danger of its prejudicial effect." Thomas also objected to the internet searches on the basis that the State failed to show the dates the searches took place. The State responded that the defense had an adequate opportunity to review the searches with the assistance of a defense expert before the pretrial hearing.

[¶10.]     The circuit court found that the internet searches were "relevant to go to motive, intent, and plan. I think they show a specific design to search for teens, preteens, jailbait . . . and incest type family-type searches and the allegations are that the defendant engaged in illegal activity with an underage child and that at least once when his wife was present, that incest was part of the offense." The court further found that the relevance substantially outweighed any prejudice and any prejudice would not be unfair.

[¶11.]     At trial, K.V. testified about the event in which she, Thomas, Unruh, and Beth engaged in group sex. Unruh and Beth were also called by the State.[3] Their testimony included descriptions of this event and other sex abuse by Thomas.

---

3.     Unruh was charged for various crimes related to his activities with K.V. He pleaded guilty and entered into a plea agreement with the State. Unruh was sentenced prior to his testimony. Beth also entered into a plea agreement with the State, the terms of which required her to testify concerning her knowledge of crimes committed by Thomas. Beth was awaiting sentencing for sexual exploitation of a minor at the time of her testimony.

Agent Brett Spencer also testified regarding his interview with Thomas in which Thomas stated that he was only attracted to older women.

[¶12.]     Agent Toby Russell testified at trial regarding his forensic searches of Thomas's computer hard drives. The State introduced reports generated showing the various searches took place December 2014, and February, March, and April 2015. While there was evidence that others had access to the computers in Thomas's house, Agent Russell linked Thomas to the computers through other identifying information on the hard drives: a user profile under the name Thomas, a full computer name of Christian, photographs of Thomas piercing his penis, and lewd photographs taken of the victims.

***Piercing Evidence***

[¶13.]     The State argued the piercing evidence was relevant to establishing the timeline of the charged offenses. It stated that K.V. would testify that "all of the Defendant's sexual activities with her occurred before he pierced his penis. The proposed evidence will prove that Defendant pierced his penis prior to [K.V.] turning 16 years of age and are relevant to prove the age elements of the crimes." Thomas argued that the act of piercing his penis was irrelevant, and the probative value of the photos was "substantially outweighed by the danger of unfair prejudice." He also pointed to the State's inability to find definitive physical evidence of the piercing after a physical exam of his person.

[¶14.]     At the pretrial hearing, the court determined the evidence was relevant to the timeline and it was "a jury question as to the weight and the ability to determine the legitimacy of any piercing[.]" The court remarked that "the dates

are very time sensitive . . . [and] the relevance outweighs any prejudice which I would find to not be unfair."

[¶15.] K.V. indicated her memory was hazy regarding the timeline of events, but testified at trial that all the sexual contact she had with Thomas occurred before he pierced his penis. She further testified that Thomas announced that he was going to pierce his penis, but she could not recall the specific date of the announcement. Unruh testified to his recollection that the announcement occurred at a Halloween party at his house on October 27, 2012, just weeks before K.V. turned sixteen.

[¶16.] The State introduced the audio portion[4] of a recording made at the 2012 Halloween party at Unruh's house, in which Thomas made the announcement about piercing his penis. It also introduced two photographs found on one of Thomas's computers of him piercing his penis, one of which included detail of a tattoo on Thomas's leg, but neither included his face. Agent Russell testified that the photos were date stamped November 3, 2012. He stated that the date that Thomas pierced his penis helped to confirm that K.V. was under the age of sixteen at the time of the alleged crimes.

### Bailiff Employment

[¶17.] On the third day of trial, the defense made a motion for mistrial claiming that it had learned the previous evening that the bailiff, Lola Cranny, had

---

4.    The court declined to allow the exhibit as a video because the video showed "people in various states of undress and physical contact, which I believe does rise to that level of sex activity that is not illegal, in any way, but could be prejudicial."

recently been employed by Aurora County State's Attorney John Steele, who was prosecuting the case. The defense argued that having a former employee of the State's Attorney being in direct contact with the jury created an "appearance of impropriety, although nobody suspects that Ms. Cranny has done anything with this . . . jury, talked to them about the case." The defense further stated "we don't know about what goes on in a juror's mind[] and I feel there's got to be some of those jurors that know Ms. Cranny works for John Steele at the current time."

[¶18.] Cranny testified during the hearing on the motion that she worked part-time as a secretary for the State's Attorney until retiring in December 2015. Cranny stated that she might have worked on the Thomas case prior to her retirement since the charges were initially filed in May 2015. Cranny testified that she also assisted Steele with tax preparation work in his private practice in 2016 and covered for the new secretary at various times during the year. In 2017, Cranny once again assisted in Steele's tax practice. Cranny testified that she did not do any "work on county cases" following her retirement in 2015, only recognized one or two of the jurors, and none of the jurors were clients of Steele's law or tax practice during the time she worked for Steele. Cranny also testified that she had not talked with any of the jurors or relatives of the jurors about the case. She talked briefly to one juror who recognized her as the organist from church, and to another who asked what she did when there were no trials. She did not talk about her work for Steele in response to the question. Cranny had no discussion with any juror about her work for Steele's office, and no juror indicated to her that they recognized her as an employee of Steele's or the State's Attorney.

[¶19.]     The court denied the defendant's motion for a mistrial, finding "there is no evidence that there has been improper or inappropriate communication that would have prejudiced this case in any way.  Here, the appearance of impropriety has been alleged but the testimony, which was uncontradicted, was that while that appearance may have existed, depending on the knowledge of any jurors and Ms. Cranny's employment, no actual prejudice has been established."  The court found nothing "inappropriate or improper about the actual communication," and further noted that no juror had come forward about improper communication, as they were instructed to do.  The court also found that Cranny acted in an appropriate manner in her contact with the jury pursuant to her role as a bailiff, but replaced Cranny with another bailiff to neutralize any perception of impropriety.

[¶20.]     At the conclusion of trial, the jury found Thomas guilty on all twenty-six counts.  The court imposed consecutive prison sentences totaling seventy-nine years.  Thomas raises two issues in this appeal:

> 1.     Whether the circuit court erred when it found other acts evidence relevant and admissible.
>
> 2.     Whether the circuit court erred when it denied the Defendant's motion for mistrial because the bailiff had been an employee of the State's Attorney.

### Analysis

> 1.     *Whether the circuit court erred when it found other acts evidence relevant and admissible.*

[¶21.]     The circuit court's determination to admit other acts evidence will only be overturned when there has been a showing that the trial court abused its discretion.  *State v. Medicine Eagle*, 2013 S.D. 60, ¶ 16, 835 N.W.2d 886, 892.  "An abuse of discretion is discretion exercised to an end or purpose not justified by and

clearly against, reason and evidence." *Id.* (quoting *State v. Big Crow*, 2009 S.D. 87, ¶ 7, 773 N.W.2d 810, 812).

[¶22.]     Evidence of other, uncharged acts committed by a defendant are admissible under SDCL 19-19-404(b) if those other acts are not used merely to prove a person's character but are admitted for other purposes "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, or lack of accident." Before admitting other acts evidence, the court must determine on the record that the evidence is (1) "relevant to a material issue in the case" and (2) the "probative value of the evidence [must not be] substantially outweighed by its prejudicial effect." *State v. Dubois*, 2008 S.D. 15, ¶ 20, 746 N.W.2d 197, 205 (quoting *State v. Owen*, 2007 S.D. 21, ¶ 14, 729 N.W.2d 356, 362-63. Evidence is relevant if "(a) [i]t has any tendency to make a fact more or less probable than it would be without the evidence; and (b) [t]he fact is of consequence in determining the action." SDCL 19-19-401. "Evidence is unduly prejudicial if it persuades the jury in an unfair or illegitimate manner, but not merely because it harms the other party's case." *State v. Bowker*, 2008 S.D. 61, ¶ 41, 754 N.W.2d 56, 69. Furthermore, the State must present sufficient evidence for a jury to conclude by a preponderance of the evidence "that the other acts occurred, and the that defendant was the actor." *State v. Phillips*, 2018 S.D. 2, ¶ 20, 906 N.W.2d 411, 417 (quoting *Kostel v. Schwartz*, 2008 S.D. 85, ¶ 28, 756 N.W.2d 363, 376.

[¶23.]     The circuit court did not abuse its discretion in admitting evidence of Thomas's internet searches and the piercing of his penis. In conducting the two-step balancing test, the circuit court noted that the internet searches for incest were

directly related to one of the charged events involving sexual activity with K.V. and Thomas's wife. Furthermore, the searches related to "teens" and "jailbait" contradicted Thomas's assertion to law enforcement that he was interested in older women. While the searches occurred after the alleged incidents, the searches were corroborative of Thomas's plan and intent to engage in sexual conduct with minors and family members. *See Medicine Eagle*, 2013 S.D. 60, ¶ 21, 835 N.W.2d at 894 (noting that other acts evidence may be "subsequent to the charged offense to prove a common plan or scheme").

[¶24.] Similarly, the court also considered the relevance of Thomas's penis piercing. While it is debatable whether Thomas's piercing was "other acts" evidence under SDCL 19-19-404(b), the parties argued the issue under Rule 404(b) and continue to argue on appeal that this evidence falls under this rule.[5] Assuming the evidence falls under SDCL 19-19-404(b), the piercing evidence was relevant for "another purpose" other than character. *See Phillips*, 2018 S.D. 2, ¶ 14, 906 N.W.2d at 415 (stating that the rule is one of inclusion, rather than exclusion, therefore the "evidence is admissible for any purpose other than simply character"). Here, the court identified that the piercing evidence was relevant to show K.V. was less than sixteen at the time of the alleged sex acts.

[¶25.] After determining the internet searches and piercing evidence offered by the State were relevant, the court also weighed the probative value against any

---

5. Even if we were to analyze the admissibility of this evidence outside the confines of Rule 404(b), the circuit court properly exercised its discretion by considering the relevance of the evidence under Rule 401, and balancing its probative value against risk of unfair prejudice under Rule 403 before admitting the evidence.

prejudice arising from the evidence. The court considered the possible prejudice, particularly from introducing photographs of Thomas piercing his penis, but noted that this evidence was highly probative to establish a timeline of when the sex acts occurred. We cannot say the court abused its discretion in making this determination since the two photographs were the only evidence supporting the State's timeline that Thomas had *in fact* pierced his penis before K.V. turned sixteen. *See State v. Wright*, 1999 S.D. 50, ¶ 14, 593 N.W.2d 792, 799 ("Once the evidence is found relevant . . . the balance tips emphatically in favor of admission unless the dangers set out in Rule 403 'substantially' outweigh probative value.").

[¶26.] Finally, while Thomas argues that the State failed to provide sufficient evidence of the internet searches at the motions hearing to allow the court to adequately consider the other acts evidence, he has not shown how the circuit court's ruling would have been different if all the actual searches had been provided at the pretrial hearing, or how he was prejudiced because not all the searches were provided in the pretrial offer of proof. Furthermore, at trial, the State introduced evidence showing that the searches and photographs were recovered from the hard drives of computers in Thomas's home, which also contained other indications that he regularly used these computers. This evidence was sufficient for a jury to conclude by a preponderance of the evidence that Thomas had conducted the internet searches.

> 2. *Whether the circuit court erred when it denied the Defendant's motion for mistrial because the bailiff had been an employee of the State's Attorney.*

[¶27.] "The denial of a motion for mistrial will not be overturned unless there is an abuse of discretion. Motions for mistrial are within the discretion of the trial

judge and will not be granted unless there is a showing of actual prejudice to the defendant." *State v. Johnson*, 2001 S.D. 80, ¶ 9, 630 N.W.2d 79, 82 (quoting *State v. Alidani,* 2000 S.D. 52, ¶ 9, 609 N.W.2d 152, 155). "For purposes of determining whether there are grounds for a mistrial, there must be error 'which, in all probability, produced some effect upon the jury's verdict and is harmful to the substantial rights of the party assigning it.'" *State v. Mollman*, 2003 S.D. 150, ¶ 23, 674 N.W.2d 22, 29 (quoting *State v. Anderson*, 2000 S.D. 45, ¶ 36, 608 N.W.2d 644, 655).

[¶28.]     "[W]hen an improper communication has taken place in a criminal case there arises a rebuttable presumption of prejudice, and the burden is on the state to show the harmless effect of the communication." *State v. Swallow*, 350 N.W.2d 606, 610 (S.D. 1984). The state can rebut the presumption of prejudice to the defendant by showing that improper juror communication was harmless. *State v. Williams*, 2008 S.D. 29, ¶ 15, 748 N.W.2d 435, 440.

[¶29.]     *Williams* involved improper contact between the state's victim witness and a juror discussing the weather during a break in the trial, in violation of the court's admonition. 2008 S.D. 29, ¶ 12, 748 N.W.2d at 440. The state in *Williams* presented evidence showing there was no discussion about the case, but the defendant argued the contact bolstered the credibility of the witness and established a common ground between the witness and juror, who were from the same community where the defendant's alleged embezzlement occurred. On appeal, this Court affirmed the circuit court's denial of a motion for mistrial, agreeing with

the trial court's determination that "the brief pleasantry concerning the weather was harmless and caused no prejudice to [defendant]." *Id.* ¶ 15, 748 N.W.2d at 440.

[¶30.] In *Swallow,* we affirmed a circuit court's denial of a defendant's motion for mistrial after a juror asked a minister, who was a character witness for the defendant, for prayer during a break in the trial. After questioning the juror, the circuit court determined that no discussion occurred about the case and the conversation did not prejudice the defendant. *Swallow*, 350 N.W.2d at 610-11. *See also State v. Martin*, 85 S.D. 587, 598, 187 N.W.2d 576, 583 (S.D. 1971) (holding that when a witness for the state engaged in conversation with three jurors, "[t]he state showed the harmless nature of the conversation between the jurors and if [the witness] did participate therein, it is not shown by [any] competent evidence on the record").

[¶31.] Here, the State introduced evidence to show there were no improper communications or information passed between Cranny and the jurors, or that there were any conversations about Cranny having worked for Steele. Further, there was no showing that Cranny acted contrary to a specific admonition of the court. Thomas also made no claim that Cranny at any time acted outside the scope of her duties as bailiff.

[¶32.] Thomas argues that despite the evidence presented by the State, the appearance of impropriety arising from the bailiff's association with the State's Attorney was sufficient to create prejudice. Thomas points out that none of the jurors were questioned about their knowledge of Cranny's background or her contact with the jurors during the trial. He also asserts that because of the small

population in the county, "it is more than distinctly possible that some of these jurors, if not all of them, knew the bailiff personally and knew that she worked for the State's Attorney . . . . The mere fact that a juror would know that the bailiff was an employee of the State's Attorney would lend more credibility to the State's case."

[¶33.]        Thomas cites *Budoff v. Holiday Inns, Inc.* in support of his argument that the potential appearance of impropriety by Cranny serving as a bailiff required the court to grant a mistrial.  732 F.2d 1523, 1526 (6th Cir. 1984).  In *Budoff*, the plaintiff's attorney employed his daughter as a paralegal.  During the trial, the paralegal contacted a friend, a son of one of the jurors, and discussed the case with him.  *Id*. at 1525.  The son then told his father that the case was going to last three or four weeks.  *Id*.  The appellate court reviewed the trial court's denial of a motion for mistrial and held that the paralegal's purposeful contact with the juror's son alone was sufficient to require a new trial even though the juror indicated that the contact did not impact his decision in the case.  *Id*. at 1526.

[¶34.]        Thomas also cites *Perkins v. State*, 244 So. 2d 414 (Miss. 1971), in support of his argument.  In *Perkins*, the court held that it was reversible error for the trial court to deny a motion for mistrial where a deputy sheriff served as a bailiff while also testifying as a material witness for the state.  *Id*. at 415.  The court expressed concern about the subtle influence on the jury due to the continued, close contact the bailiff had with the jury, as well as the appearance of unfairness.  *Id*.

[¶35.]        Finally, Thomas cites the Supreme Court of Wyoming's decision in *Romo v. State*, 500 P.2d 678 (Wyo. 1972), in support of his motion for a mistrial.  In *Romo*, the police chief and three jurors had lunch with a police detective who had

just finished testifying for the state. Although no discussion of the case took place during the lunch, the court held the defendant's motion for a mistrial should have been granted. *Id*. at 680-82.

[¶36.] Thomas argues that the very appearance of impropriety was enough for the courts in each of these cases to determine that the lower court erred by denying a defendant's motion for mistrial. However, all three cases cited by Thomas are distinguishable from this case. *Budoff* found an intentional violation of a court order by the paralegal of plaintiff's counsel after she purposely contacted the son of a juror about the case. *Romo* and *Perkins* both involved significant contact during the trial between a witness for the state and multiple jurors. Both courts expressed concern with prejudice based on the extensive interactions between jurors and witnesses outside the courtroom, and how those interactions may have affected the jurors' assessment of witness credibility or the perception of their testimony.

[¶37.] Beyond this, our cases require prejudice to successfully challenge a trial court's denial of a mistrial motion—not merely the potential of prejudice that Thomas argues may have resulted from Cranny's service as the bailiff. As indicated, the State presented evidence to rebut any presumption of prejudice that may have arisen from Cranny's service as a bailiff. Further, Cranny was not a witness, and her involvement with the State's Attorney had become increasingly removed over time. She had not worked as a part-time secretary for the State's Attorney for over a year before trial, and thereafter only assisted with tax preparation for Steele's private practice. Thomas's suggestion that jurors in this

small community might have known that Cranny had some association with Steele, and that this somehow influenced the jurors to be more favorably disposed to the State is speculative on this record and insufficient to demonstrate prejudice, either actual or presumed.[6]

[¶38.]     Under the circumstances, we conclude the circuit court acted within its discretion when it denied Thomas's motion for a mistrial.  The court considered Cranny's work history with Steele's office, the evidence of her interaction with the jurors, and correctly determined that Thomas had not been prejudiced.  The circuit court also took additional measures to avoid any possibility that prejudice might arise from Cranny's continued interaction with the jurors through the trial and jury deliberations by dismissing Cranny as a bailiff for the remainder of trial.

### Conclusion

[¶39.]     The circuit court did not abuse its discretion by admitting the internet search histories and piercing evidence or by denying the Thomas's motion for a mistrial.  We affirm the convictions.

[¶40.]     GILBERTSON, Chief Justice, and KERN and SALTER, Justices, concur.

---

6.     Cranny, and particularly the State's Attorney, should have informed the court and defense counsel of Cranny's recent work for Steele's private practice.  This information would have permitted the court to address Thomas's concerns before the start of trial.