#30006-a-MES
**2023 S.D. 46**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,  Plaintiff and Appellee,

v.

GERMAN FRANCISCO ORTIZ-MARTINEZ,  Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BEADLE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE KENT A. SHELTON
Judge

\* \* \* \*

RON J. VOLESKY
Huron, South Dakota  Attorney for defendant
and appellant.


MARTY J. JACKLEY
Attorney General

ERIN E. HANDKE
Assistant Attorney General
Pierre, South Dakota  Attorneys for plaintiff
and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
MARCH 21, 2023
OPINION FILED **08/23/23**

#30006

SALTER, Justice

[¶1.]    German Francisco Ortiz-Martinez was indicted on two counts of rape in the first degree. The charged offenses were alleged to be two instances of rape among many others which were not charged. Defense counsel cross-examined the victim in an effort to demonstrate what the attorney believed to be inconsistencies between the victim's testimony and a prior statement. Believing the defense counsel's questions had prompted the victim to testify about *uncharged* events involving Ortiz-Martinez, the prosecutor asked the victim about this other conduct for the stated reason of clarifying her testimony on redirect examination.

[¶2.]    Ortiz-Martinez did not object, but he later made a motion for a mistrial, alleging he had not received notice of the State's intent to introduce other acts evidence. The circuit court denied the motion, and Ortiz-Martinez was convicted of both counts. He was sentenced to two consecutive twenty-five-year prison terms. Ortiz-Martinez appeals the court's decision to deny his mistrial motion and a related issue regarding a jury instruction that addressed the uncharged conduct. We affirm.

### Factual and Procedural History

[¶3.]    Ortiz-Martinez was indicted on two counts of rape in the first degree involving his stepdaughter, L.V. The indictment alleged the offenses were committed in successive years when L.V. was 11 and 12 years old. *See* SDCL 22-22-1(1) (describing rape in the first degree as an act of sexual penetration involving a victim who "is less than thirteen years of age").

[¶4.]    Count I alleged that Ortiz-Martinez raped L.V. between November 3, 2017, and November 2, 2018. The evidence supporting the charge related to

-1-

conduct alleged to have occurred in L.V.'s bedroom at the Huron home that she shared with Ortiz-Martinez, her mother, and her brother. Because the family later moved to a different house in Huron, Count I became known as the "old house" charge.

[¶5.] Count II was alleged to have taken place between November 3, 2018, and August 27, 2019. The conduct related to an incident alleged to have occurred on a couch at the family's "new house."

[¶6.] The indictment follows L.V.'s disclosure of the abuse to a friend. That friend told another friend, whose mother reported the behavior to law enforcement. L.V.'s father lives near Huron, and his former girlfriend took L.V. to Child's Voice in Sioux Falls for a forensic interview during which she described multiple instances in which Ortiz-Martinez had raped her over a significant period of time.

[¶7.] The case was tried to a jury on December 15 and 16, 2021. The State called L.V. as its first witness. Prior to having her describe the specific incidents of rape, the State initiated the following exchange:

> Prosecutor: And just to put this in context, we're going to talk about two specific incidents. But did it happen more than those two times?
>
> L.V.: Yes.
>
> Prosecutor: And it's been three or four years, but there's two specific incidents that we're going to talk about today. Do you know what those two are?
>
> L.V.: Yeah.

[¶8.] Defense counsel did not object to the "more than those two times" question, and the State continued its examination, focusing first on the conduct

associated with Count I. L.V. testified that Ortiz-Martinez had touched her private parts while in her bedroom at their old house and had also put his fingers in her vagina.

[¶9.]     The State asked L.V. whether she had told her mother that Ortiz-Martinez raped her:

> Prosecutor: Other than your friend at the soccer game when this whole thing started, who did you tell?
>
> L.V.:     My mom.
>
> Prosecutor: And do you remember about how long it had been going on when you told your mom?
>
> L.V.:     No.
>
> Prosecutor: Did it stop when you told your mom?
>
> L.V.:     Yes, it stopped for a little bit after I told my mom, but then he kept going.

Ortiz-Martinez did not object to this last answer.

[¶10.]    The State moved on and discussed Count II—the incident on the couch at the new house. L.V. testified that one night she had gone downstairs to her bedroom to go to sleep. She explained that Ortiz-Martinez later came downstairs, made her go to the couch, and started touching her and taking her clothes off. Ortiz-Martinez put a blanket over her head, L.V. stated, and then penetrated her vaginally with his penis.

[¶11.]    On cross-examination, defense counsel attempted to impeach L.V.'s testimony by questioning her about specific details relating to the incidents. Defense counsel attempted to point out what he believed to be inconsistencies

between L.V.'s testimony and what she had told the Child's Voice forensic

interviewer:

Defense counsel: Do you recall telling Child's Voice that it happened in the living room? Do you recall that?

L.V.: Yeah.

Defense counsel: If it happened in the living room, then it couldn't have happened in your room, right?

L.V.: I was talking about the living room at my new house.

Defense counsel: We're talking about the first rape which - - the alleged first rape which took place at the old house, right?

L.V.: Yes.

Defense counsel: And you testified to [the prosecutor] not five minutes ago that that rape took place in your room, correct?

L.V.: Yes.

Defense counsel: But yet when you were interviewed at Child's Voice, you said it took place in the living room; isn't that correct?

L.V.: Yes.

Defense counsel: And if it took place in the living room, it took place on a couch; is that right?

L.V.: Yeah.

*******

Defense counsel: And do you recall telling Child's Voice that the reason he stopped was he heard someone coming, right?

L.V.: Yes.

[¶12.]      The State believed defense counsel's questions had caused L.V. to recall details of other, uncharged incidents of rape by Ortiz-Martinez.  And the State attempted to account for the apparent discrepancies by asking L.V. on redirect examination if she had been recalling other incidents when she was testifying on cross-examination:

> Prosecutor:  And when your dad - - your stepdad was raping you, did that happen more than one time?
>
> L.V.:        Yes.
>
> Prosecutor:  Did it happen more than ten times?
>
> L.V.:        Yes.
>
> Prosecutor:  So it happened a lot too?
>
> L.V.:        Yes.
>
> *******
>
> Prosecutor:  And it happened a lot.  And I know we're focusing on two and I hate to sit here and say that, but this happened to you more than these two times we're talking about?
>
> L.V.:        Yes.

Defense counsel, again, did not object to this testimony.

[¶13.]      Notably, the taped forensic interview was not, itself, admitted at trial, and it does not appear in the record in a redacted form or otherwise.[1]  Despite this,

---

1.    The defense filed an objection to the State's pretrial notice of its intent to use the Child's Voice video at trial.  The objection requested a hearing pursuant to SDCL 19-19-806.1 to "establish whether or not there are sufficient indicia of reliability regarding the statements made by the alleged victim to Child's Voice."  There was no such hearing, but at a pretrial motions hearing, the

(continued . . .)

both the prosecutor and defense counsel repeatedly referred to the contents of the videotaped interview before both the circuit court and the jury.

[¶14.]	The forensic interviewer did testify at trial, but much of her testimony simply explained the protocol she uses to interview children, stated in general terms. And though she did not describe L.V.'s interview in detail, the State and defense counsel both referenced the interview, implicitly and expressly, during their examinations of the forensic interviewer.

[¶15.]	For instance, the State asked the forensic interviewer if a child could "intermingle" details of multiple instances of sexual abuse. The forensic interviewer answered "Yes" and further explained that the risk a child will confuse the details of multiple incidents of abuse increases when an untrained person asks the questions.

[¶16.]	Defense counsel's questions were more overt and produced a response which summarized the breadth of L.V.'s disclosures of abuse by Ortiz-Martinez:

> Defense counsel:	She didn't disclose multiple rapes though; did she? I watched that video. She didn't mention multiple rapes?
>
> Forensic interviewer:	She didn't use the word rape with me, but what she does disclose was that her stepfather put his penis in her vagina, more than one time. Including times at the old

---

(. . . continued)

circuit court stated that if the defense wished to make an objection to the video during the trial, the court would allow argument at that time outside the presence of the jury. Ultimately, however, the State did not attempt to introduce the video. During closing argument, defense counsel suggested that the State withheld the video from the jury which drew a speaking objection from the prosecutor who commented that the reason the video is not in evidence was due to "a motion by the defense."

> house, the new house, as well as the camper . . . As well as hand or digital vaginal penetration, more than one time.[2]

[¶17.]    At the beginning of the second day of trial, before the jury entered the courtroom, defense counsel made a motion for a mistrial, claiming the State had questioned L.V. about uncharged conduct without providing notice of its intent to introduce other acts evidence. The circuit court denied the motion, determining that the defense had opened the door to the other acts evidence when it cross-examined L.V. about the exact location of the rapes she had described.

[¶18.]    The defense's case included testimony from Brenda Ortiz, who is L.V.'s mother and Ortiz-Martinez's wife. Brenda described a good relationship with her daughter, but she testified that L.V. had told her that she was going to tell her father that Ortiz-Martinez had touched her because she was mad at Ortiz-Martinez. Brenda did not believe that Ortiz-Martinez had actually touched her daughter inappropriately. Ortiz-Martinez elected to testify in his own defense and denied ever raping L.V.

[¶19.]    After the close of the evidence, the State proposed a jury instruction relating to the other acts testimony, which read:

> Evidence has been introduced that the defendant may have committed acts other than that which is now charged. You may not consider it as tending to show in any other respect the defendant's guilt of the offense with which the defendant is charged.

---

2.    Defense counsel appeared to begin an objection to this testimony but reconsidered the effort almost immediately, stating, "I will object - - that's - - sorry. Go ahead."

[¶20.]     Ortiz-Martinez did not object to this instruction, but he did propose an additional instruction:

> You are admonished to disregard the testimony elicited by either party regarding alleged additional acts of rape other than Counts 1 and 2.

[¶21.]     The circuit court accepted the former instruction and refused the latter.  It determined that the instruction proposed by the State sufficiently addressed the other acts evidence, and the court stated its view that defense counsel was "still able to argue inconsistent statements" to the jury.

[¶22.]     In the State's closing argument, the prosecutor referred to other acts of rape to explain why L.V.'s testimony about Counts I and II may have been confused with different, uncharged incidents.  The prosecutor also blamed himself for leaving L.V. at a disadvantage when it came to the details of her prior statement to Child's Voice, suggesting he should have required defense counsel to use a transcript of her Child's Voice interview during cross-examination.

[¶23.]     Defense counsel did not object to any of this argument, but he did object when the prosecutor referenced the "multiple times" of abuse later in the State's rebuttal.  The circuit court sustained the objection.

[¶24.]     Though not directly relevant to the issues presented in this appeal, the jury sent a note to the circuit court during deliberations, asking, "is there a reason that the jury is not able to view the video?"  With the concurrence of both attorneys, the circuit court issued a response, instructing the jury that it could consider only the evidence that had been admitted during the trial.

[¶25.]     The jury later returned guilty verdicts on both counts, and the circuit court sentenced Ortiz-Martinez to twenty-five years in the penitentiary on each count with the sentences to run consecutively.  He now appeals, raising two issues we restate as follows:

> 1.     Whether the circuit court abused its discretion when it denied Ortiz-Martinez's motion for a mistrial based on the introduction of evidence relating to uncharged conduct.
>
> 2.     Whether the circuit court abused its discretion when it denied Ortiz-Martinez's proposed jury instruction regarding other alleged acts of rape.

## Analysis

### *Mistrial based upon unpreserved other acts evidence claim*

[¶26.]     "The denial of a motion for mistrial will not be overturned unless there is an abuse of discretion."  *State v. Red Cloud*, 2022 S.D. 17, ¶ 39, 972 N.W.2d 517, 530 (quoting *State v. Thomas*, 2019 S.D. 1, ¶ 27, 922 N.W.2d 9, 17).  "When a circuit court examines whether to grant a mistrial, it must find error 'which, in all probability, produced some effect upon the jury's verdict and is harmful to the substantial rights' of the defendant in order to grant the mistrial."  *Id.* (quoting *Thomas*, 2019 S.D. 1, ¶ 27, 922 N.W.2d at 17).  We have principally described the mistrial standard in terms of effect—actual prejudice.  *See id.* (quoting *Thomas*, 2019 S.D. 1, ¶ 27, 922 N.W.2d at 17) (holding a motion for mistrial "will not be granted unless there is a showing of actual prejudice to the defendant").

[¶27.]     And although our formulation of the mistrial standard often refers to an "error," the circumstances prompting a mistrial motion, in many instances, do not involve *judicial* error, but rather some other irregularity that has occurred

during the course of a trial. In *State v. Kryger*, for example, one of the defendant's motions for mistrial was based upon inadvertent contact between the members of the jury and the defendant outside of the courtroom. 2018 S.D. 13, ¶ 36, 907 N.W.2d 800, 812; s*ee also State v. Williams*, 2008 S.D. 29, ¶ 15, 748 N.W.2d 435, 440 (reviewing the denial of a mistrial motion based upon conversations between witnesses and jurors on topics unrelated to the trial).

[¶28.] But in instances, like this one, where a defendant's motion for a mistrial *is* based upon an allegation of judicial error—i.e., the admission of other acts evidence violated SDCL 19-19-404(b) (Rule 404(b))—a mistrial motion cannot be used as a means to review the underlying unpreserved claim of error, at least not in the same way the issue could be reviewed with a contemporaneous objection.[3] A belated objection to admission of evidence renders a trial court's ability to take remedial action difficult, if not impossible. *See State v. Fool Bull*, 2008 S.D. 11, ¶ 14, 745 N.W.2d 380, 385–86 (holding that the issue relating to relevancy of evidence was not preserved for appeal with belated objection, citing cases).

[¶29.] For these cases involving claims of judicial error, we must undertake some type of merits review in order to determine whether there was error at all— i.e., there can be no actual prejudice if there was no error. But even if there was judicial error, the remedy for these unpreserved claims is not focused on

---

3. Of course, for errors that are *never* brought to the attention of the trial court, we may review, or notice, unpreserved issues under the plain error doctrine, as SDCL 23A-44-15 and our cases recognize. *See, e.g., State v. Wilson*, 2020 S.D. 41, ¶ 17, 947 N.W.2d 131, 136 (alteration in original) ("Under SDCL 23A-44-15 (Rule 52(b)), '[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of a court.'").

admissibility, but rather, prematurely ending the trial by declaring a mistrial—a remedy that is ultimately justified only upon a showing of actual prejudice.

[¶30.] We note at the outset that Ortiz-Martinez's primary argument for mistrial before the circuit court centered on his assertion that the State had not provided notice of the other acts evidence, not that the evidence itself was so damaging that it resulted in actual prejudice. *See* SDCL 19-19-404(b)(3) (requiring the prosecutor to provide reasonable notice of proposed other acts evidence). The references to uncharged conduct were largely general in nature and not otherwise factually developed. Defense counsel's additional claim that the lack of notice prevented him from conducting additional investigation into L.V.'s uncharged allegations of rape overlooks the fact that counsel had the Child's Voice recorded interview with L.V. and had reviewed it, as he acknowledged during his cross-examination of the forensic interviewer.

[¶31.] But beyond this, the plain fact that the trial record contains references to uncharged allegations of rape does not, as a matter of course, create error or actual prejudice. Other acts evidence and other, similar types of evidence are not categorially excluded from trials. Rather, they are regulated through the rules of evidence and the common law. Indeed, there are several theories upon which evidence of uncharged conduct can be appropriately admitted.

[¶32.] For instance, evidence of other crimes, wrongs, or acts not otherwise admissible "to show that on a particular occasion the person acted in accordance with the character" may, nevertheless, "be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence

of mistake, or lack of accident." SDCL 19-19-404(b)(1)–(2). We have also observed that the "another purpose" text of Rule 404(b) means that the list "for which evidence of other acts may be admitted is nonexclusive." *Kostel v. Schwartz*, 2008 S.D. 85, ¶ 27, 756 N.W.2d 363, 375 (citing *State v. Wright*, 1999 S.D. 50, ¶ 14, 593 N.W.2d 792, 798).

[¶33.]    Uncharged conduct may also be admissible when it is considered res gestae, or evidence that is so blended to the conduct forming the basis of a criminal prosecution that it is necessary to explain the circumstances. We have recognized that this sort of intrinsic evidence theory could support the admission of a child rape victim's statement that the defendant raped the child "all the time." *See State v. Floody*, 481 N.W.2d 242, 252–53 (S.D. 1992).

[¶34.]    Still too, other acts evidence could be admitted by acquiescence, or where both parties elicit it, or when one party opens the door to the admission of other acts evidence. *See State v. Taylor*, 2020 S.D. 48, ¶ 34 n.4, 948 N.W.2d 342, 352 n.4 (quoting *State v. Letcher*, 1996 S.D. 88, ¶ 25, 552 N.W.2d 402, 406) (holding that a circuit court may permit the State to "introduce otherwise inadmissible evidence when a criminal defendant's trial strategy has 'opened the door' to the evidence"). In fact, that happened here when defense counsel asked the forensic examiner, "She didn't disclose multiple rapes though; did she? I watched that video. She didn't disclose multiple rapes?" In a direct response to the question, the forensic interviewer confirmed that L.V. *had* disclosed multiple instances in which her stepfather had penetrated her digitally and with his penis "at the old house, the new house, as well as the camper."

[¶35.] We conclude, therefore, that there are plausible grounds for the admission of the evidence of uncharged conduct, and the circuit court did not abuse its discretion when it denied Ortiz-Martinez's motion for mistrial.[4]

***The other acts jury instruction***

[¶36.] Ortiz-Martinez also alleges that the circuit court's failure to include his proposed instruction regarding other acts of rape constitutes reversible error. "[W]e generally review a trial court's decision to grant or deny a particular instruction under the abuse of discretion standard." *State v. Schumacher*, 2021 S.D. 16, ¶ 25, 956 N.W.2d 427, 433 (quoting *Vetter v. Cam Wal Elec. Co-op., Inc.*, 2006 S.D. 21, ¶ 10, 711 N.W.2d 612, 615). "Error in declining to apply a proposed instruction is reversible only if it is prejudicial, and the defendant has the burden of proving any prejudice." *State v. Doap Deng Chuol*, 2014 S.D. 33, ¶ 31, 849 N.W.2d 255, 263 (quoting *State v. Hauge*, 2013 S.D. 26, ¶ 17, 829 N.W.2d 145, 151). Furthermore, "[w]e consider jury instructions as a whole, and '[i]f they "correctly state the law and inform the jury, they are sufficient."'" *State v. Nelson*, 2022 S.D. 12, ¶ 42, 970 N.W.2d 814, 828 (second alteration in original) (quoting *Kryger*, 2018 S.D. 13, ¶ 41, 907 N.W.2d at 814).

[¶37.] Under the facts of this case, the instruction proposed by the defense was similar to the State's proposed "other acts" instruction that was given to the jury, without objection. The accepted instruction adequately informed the jury that

---

4. We also note that Ortiz-Martinez elected to testify and denied any claim that he had "ever" raped L.V. The resulting jury verdict reflects what we would characterize as a credibility decision by the finder of fact and not the influence of uncharged conduct references during the trial.

it could not consider the other acts evidence "as tending to show in any other respect the defendant's guilt of the offense with which the defendant is charged."[5] That is essentially what Ortiz-Martinez sought, and, in any event, "[w]e 'presume that juries understand and abide by curative instructions.'" *Id.* ¶ 41, 970 N.W.2d at 827–28 (quoting *State v. Dillon*, 2010 S.D. 72, ¶ 28, 788 N.W.2d 360, 369).[6]

[¶38.]     We affirm.

[¶39.]     JENSEN, Chief Justice, and KERN, DEVANEY, and MYREN, Justices, concur.

---

5.    The instruction did not list a permitted use for the other acts evidence, but, as indicated, it was given without objection.

6.    Additionally, Ortiz-Martinez has not argued that the omission of the proposed instruction resulted in prejudice to him.