#29072-a-SRJ
**2020 S.D. 48**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                          Plaintiff and Appellee,

    v.

COLE TAYLOR,                          Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MICHELLE K. COMER
Judge

* * * *

JASON R. RAVNSBORG
Attorney General

CHELSEA WENZEL
Assistant Attorney General
Pierre, South Dakota                          Attorneys for plaintiff and
    appellee.


TIMOTHY J. BARNAUD
Belle Fourche, South Dakota                          Attorney for defendant and
    appellant.

* * * *

ARGUED
APRIL 22, 2020
OPINION FILED **08/19/20**

#29072

JENSEN, Justice

[¶1.]    A jury convicted Cole Taylor of second-degree rape in violation of SDCL 22-22-1(2), and sexual contact involving a second victim in violation of SDCL 22-22-7.4. Taylor appeals claiming multiple errors by the circuit court at trial and sentencing. We affirm.

**Facts and Procedural History**

[¶2.]    On November 10, 2017, M.R. and her friend A.F. travelled to Deadwood, South Dakota, to attend a concert. A.F. had received four concert tickets and a one-night stay at a Deadwood hotel from her employer. The hotel room included one king-sized bed. A.F. and M.R. attended a VIP party for about an hour before going to the concert. A.F. and M.R. each drank alcoholic beverages at the VIP party and during the concert.

[¶3.]    A.F. gave her two extra concert tickets to her friend, Austin Fitcher. Fitcher told A.F. that he would bring a friend to use the last ticket. A.F. and M.R. did not know who Fitcher planned to bring. Fitcher arrived at the concert venue with the defendant, Cole Taylor. They met with A.F. and M.R. just as the concert was ending. M.R. knew Taylor because they had a consensual sexual encounter in April 2013. They had since seen each other one other time and were Facebook friends.

[¶4.]    When the concert ended, the four of them went to a bar for drinks. A.F. and Fitcher left the bar and returned to the hotel room. M.R. and Taylor stayed at the bar and later joined A.F. and Fitcher at the hotel room, where they all continued to socialize and consume alcohol. A.F. claims that Taylor held her in

-1-

place and kissed her while she was sitting on the bed. A.F. moved away from Taylor, but she chose not to say anything to him to avoid conflict. Later, Taylor leaned in and kissed M.R. M.R. stopped Taylor when he tried to kiss her a second time. M.R. and Taylor went outside to smoke, and M.R. informed him that she had a boyfriend and did not want to do anything to jeopardize that relationship.

[¶5.] A.F., Fitcher, and Taylor decided to go back to the bars, but M.R. stayed at the hotel room to sleep because she felt sick. While on the dance floor at one of the bars, Taylor came up behind A.F. and placed one hand on her breast and his other hand on her vaginal area. A.F. walked away from Taylor and told Fitcher what happened. Fitcher told Taylor to "knock it off," and Taylor replied, "my bad, my bad." After the bars closed at 2 a.m., A.F., Fitcher, and Taylor headed back to their hotel room. On the way, A.F. realized she had lost an item. She and Fitcher went back to find it while Taylor continued to the hotel room.

[¶6.] Taylor arrived at the hotel room and knocked on the door. M.R. opened the door just far enough to let him in and then hurried back to the bed to cover up because she had been sleeping naked, as she did every night. M.R. did not look to see who she had let in when she opened the door. According to M.R., she realized that she had let Taylor in when Taylor joined her in bed without any clothing on.

[¶7.] Once in bed, Taylor flipped M.R. onto her back, got on top of her, and penetrated M.R. vaginally. M.R. testified that she was initially in shock and then told Taylor to "stop" and said, "I can't." She was crying, hyperventilating, and having a panic attack. Taylor shushed M.R. and tried to calm her down, after

which he continued to vaginally penetrate her. M.R. physically attempted to hold Taylor back, but she did not have the strength to stop him. She told Taylor to stop multiple times.

[¶8.] M.R. then began pulling on the edge of the bed to try and get away from Taylor. She flipped onto her stomach and began crawling off the bed when Taylor grabbed her by the hips and penetrated her anally. Taylor then tried to put his penis in her mouth, but M.R. resisted by clenching her teeth. Taylor then flipped M.R. back onto her stomach and continued to penetrate her vaginally and anally until he ejaculated. M.R. eventually passed out. A.F. and Fitcher were not in the room during this time.

[¶9.] M.R. did not wake up until her alarm sounded around 7:00 a.m. She woke up on one side of the bed with Taylor next to her. A.F. and Fitcher were on the other side of the bed. When M.R. started to move, Taylor woke up, got on top of her, and put himself between her legs. M.R. tried to get away, but Taylor physically restrained her. Taylor then masturbated while on top of M.R. until he ejaculated on her. A.F. and Fitcher were asleep in the bed while this took place.

[¶10.] M.R. got up and immediately took a shower. After her shower, she woke up A.F. and told her they needed to leave. M.R. and A.F. quickly packed their belongings and left Deadwood. M.R. reported the incident to the Deadwood Police Department on November 12, 2017.

[¶11.] After reporting the incident, M.R. was examined at a local hospital. Physical evidence from M.R.'s person was sent to the state forensics laboratory

(DCI) in Pierre. M.R.'s vaginal and anal swabs tested positive for sperm cells, and the DNA matched the known DNA profile of Taylor.

[¶12.] A grand jury returned an indictment on July 25, 2018, charging Taylor with second-degree rape and attempted second-degree rape of M.R. The State also filed a part II habitual offender information alleging Taylor had two prior felony convictions. The State separately filed an information charging Taylor with two misdemeanor charges of sexual contact with A.F. Taylor pleaded not guilty to all charges.

[¶13.] At a pretrial hearing, the circuit court considered the State's request to introduce other act evidence in the form of two unrelated sexual assaults that two other victims (P.R. and T.B.) alleged Taylor had committed. Taylor was initially charged with rape in T.B.'s case, but the charge was dismissed prior to trial. In P.R.'s case, Taylor was acquitted by a jury on the rape charges. The circuit court determined that the State could present evidence of both prior alleged assaults at trial.

[¶14.] A jury trial was held on April 8-9, 2019, and the State presented testimony on the other acts evidence from P.R. and T.B. P.R. testified that Taylor raped her in November 2013 in her college dorm room. This was the only incident regarding P.R. that the State gave the defense formal notice of and the circuit court approved of prior to trial. P.R. testified that she was 19 years old at the time and knew Taylor through her boyfriend. P.R. explained that she was texting her boyfriend's phone when she received text messages from a different number from someone claiming to be her boyfriend who asked to come have sex with her. P.R.

initially believed that the texts were from her boyfriend, but soon realized that it was Taylor. Taylor asked if he could come to her dorm room so he could apologize for an "event" that occurred in August 2013. P.R. explained that she allowed Taylor in the room to apologize because she did not want to interfere with Taylor's friendship with her boyfriend.

[¶15.] P.R. testified that she and Taylor talked for a short time and then Taylor kissed her. She told him to stop, but Taylor took off her pants and held a pillow over her face when she screamed. Taylor told her that he would take the pillow off her face if she stopped screaming. He then vaginally penetrated her with his penis and tried to penetrate her anally. P.R. testified that Taylor also forced her to submit to oral sex. Taylor then penetrated P.R. vaginally a second time and ejaculated inside of her. P.R. reported the incident to police and went to the hospital. Evidence was presented that Taylor was charged with rape of P.R. but acquitted by a jury.

[¶16.] During P.R.'s cross-examination, the following exchange occurred between P.R. and Taylor's defense counsel:

> Q: You and Mr. Taylor had engaged in prior sexual encounters prior to that incident; correct?
>
> A: No, sir. He raped me before that.
>
> . . .
>
> Q: Okay. Well, you testified back at your trial that you let him into your room so people could hear him apologize; correct?
>
> A: No. I did that because of people—if I did end up screaming, people would hear me. And we couldn't do that in the car because that's where he raped me before is in his car.

Taylor's defense counsel did not object, move to strike, or offer a curative instruction to this evidence. On redirect examination, the State had P.R. explain that the "event" she believed Taylor was coming to apologize for was when he raped her in his car at a dog park in Rapid City in August 2013.

[¶17.] The jury also heard evidence at trial about a sexual assault that was alleged to have occurred between Taylor and his 21-year-old second cousin, T.B., in December 2014. T.B.'s father testified at trial that T.B. had previously sustained a traumatic brain injury in a car accident. Due to the injury, T.B. has memory issues, needs extra time to process words, and has difficulty walking and balancing. He also testified that T.B. is easily influenced and sometimes has the "mentality of a 6-year-old."

[¶18.] T.B. testified that on December 30, 2014, Taylor asked her to take him to the store. T.B. drove Taylor to the store and then back to her house, where they went into T.B.'s bedroom. T.B. told the jury that Taylor slapped her in the head, butt, and back and called her vulgar names. Taylor then penetrated her vaginally and anally with his penis. Taylor had her get into a kneeling position and made her perform oral sex. Taylor ejaculated on T.B.'s face. T.B. told her father what happened when he got home. Her father called the police, and Taylor was charged with rape. The charges involving T.B. were later dismissed against Taylor.

[¶19.] At trial, the State offered the forensic DNA testing reports prepared by the DCI crime lab for the cases involving P.R. and T.B. The reports were offered into evidence through the investigating officers in each case. Each report included an affidavit from the forensic analyst who conducted the testing, certifying that the

report contained the results of the testing and was a true and correct copy of the report. Neither examiner was called as a witness. The report in P.R.'s case showed that seminal fluid found on P.R.'s person matched Taylor's DNA profile. Similarly, the report in T.B.'s case showed that seminal fluid found on T.B.'s person and on her underwear matched Taylor's DNA profile. Taylor objected to both reports, arguing that they lacked foundation, violated his Sixth Amendment right to confront and cross-examine witnesses, and there was an inadequate chain of custody. The circuit court admitted the evidence under SDCL 23-3-19.3.[1]

[¶20.] At the close of evidence, Taylor moved for a judgment of acquittal or, alternatively, for a mistrial, alleging A.F. had improperly coached Fitcher before his testimony. The circuit court denied the motions. The jury returned verdicts, finding Taylor guilty of second-degree rape of M.R. and not guilty of attempted rape. The jury also found Taylor guilty of two counts of sexual contact with A.F. After the

---

1.  SDCL 23-3-19.3 provides:

> A copy of a statement of the methods and findings of any examination or analysis conducted by employees of the State Forensic Laboratory or by a certified chemist employed by a law enforcement agency within the state, authenticated under oath by the employee, is prima facie evidence in all grand jury, court, parole, probation, and contested case proceedings in the State of South Dakota of the facts contained therein reciting the methods and findings.

> The statement has the same force and effect as if the person who performed the analysis or examination had testified in person. An accused person or the accused's attorney may request that the person in the State Forensic Laboratory or the certified chemist employed by a law enforcement agency within the state, who conducted the examination testify in person at a criminal trial, parole revocation, or probation revocation, concerning the examination or analysis.

verdicts, Taylor renewed his prior motions and, for the first time, moved for a mistrial based on P.R.'s testimony concerning the unnoticed 404(b) evidence that Taylor had raped her in his vehicle. The circuit court denied the motions.

[¶21.] Prior to sentencing, Taylor admitted to the two prior felony convictions in the part II information, enhancing the potential maximum sentence on Taylor's second-degree rape conviction one level: from a 50-year penitentiary sentence to a maximum sentence of life imprisonment. The circuit court sentenced Taylor to 50 years in the penitentiary with 20 years suspended and credit for 337 days served. The court sentenced Taylor to 337 days in county jail, with credit for time served for the two convictions of sexual contact.

[¶22.] Taylor raises multiple issues in this appeal that we restate as follows:

1. Whether the circuit court abused its discretion by allowing evidence of Taylor's two prior alleged sexual assaults.

2. Whether the admission of the other act evidence violated Taylor's constitutional rights under the Double Jeopardy and Due Process Clauses.

3. Whether the circuit court abused its discretion when it denied Taylor's motion for a mistrial.

4. Whether the circuit court erred when it denied Taylor's motion for a judgment of acquittal.

5. Whether the circuit court's admission of the forensic laboratory reports by affidavit under SDCL 23-3-19.3 resulted in prejudicial error.

6. Whether Taylor's sentence violates the Eighth Amendment.

## Analysis and Decision

*1. Whether the circuit court abused its discretion by allowing evidence of Taylor's two prior alleged sexual assaults.*

[¶23.] "We presume evidentiary rulings made by a trial court are correct, and review those rulings under an abuse of discretion standard." *State v. Fool Bull*, 2008 S.D. 11, ¶ 10, 745 N.W.2d 380, 385. An abuse of discretion "is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable." *State v. Lemler*, 2009 S.D. 86, ¶ 40, 774 N.W.2d 272, 286.

[¶24.] Taylor argues the other act evidence regarding the alleged sexual assaults of P.R. and T.B. was not properly admitted under SDCL 19-19-404(b) because it was improper character evidence. Taylor also claims the evidence was unduly prejudicial under SDCL 19-19-403 and effectively resulted in a trial within a trial.

[¶25.] SDCL 19-19-404(b) provides: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, the rule permits other act evidence "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* "Thus . . . evidence of other crimes or wrongs is inadmissible to show bad character and that the defendant acted in conformity therewith on the date in question. However, such evidence is admissible if it is relevant to one of the stated exceptions . . . and that exception or element is in issue." *State v. Willis*, 370 N.W.2d 193, 197 (S.D. 1985) (internal citations omitted) (analyzing an older version

of SDCL 19-19-404(b)).  When other act evidence is admitted, "the State must present sufficient evidence for a jury to conclude by a preponderance of the evidence 'that the other acts occurred, and that the defendant was the actor.'"  *State v. Thomas*, 2019 S.D. 1, ¶ 22, 922 N.W.2d 9, 16 (quoting *State v. Phillips*, 2018 S.D. 2, ¶ 20, 906 N.W.2d 411, 417).

[¶26.]       We apply a two-part test when considering the admissibility of other act evidence under 404(b).  *State v. Stone*, 2019 S.D. 18, ¶ 24, 925 N.W.2d 488, 497.  "First, the court must determine whether the other-act evidence is relevant to some material issue in the case other than character[.]  Second, the court must determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice[.]"  *Id.* (quoting *State v. Birdshead*, 2015 S.D. 77, ¶ 57, 871 N.W.2d 62, 81).

[¶27.]       "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence."  SDCL 19-19-401(a).  "Relevancy is demonstrated where evidence is necessary to prove an element of the crime, not simply to demonstrate [the] defendant's character."  *State v. Lassiter*, 2005 S.D. 8, ¶ 14 n.2, 692 N.W.2d 171, 175 n.2.  "[I]f the other act evidence is admissible for any purpose other than simply character, then it is sustainable.  All that is prohibited under § 404(b) is that similar act evidence not be admitted solely to prove character."  *Phillips*, 2018 S.D. 2, ¶ 14, 906 N.W.2d at 415 (internal quotation marks omitted).

[¶28.]       Here, the circuit court found Taylor's alleged sexual assaults of P.R. and T.B. relevant to establish Taylor's "plan, intent and motive to achieve sexual

gratification with non-consenting young female partners." The court reasoned that the evidence included "three unrelated complaining witnesses who do not know each other. All three young women have made similar complaints against the Defendant. All three young women assert they were sexually assaulted in a non-consensual manner. In two of the three cases, the young women assert that the Defendant anally penetrated them." The court determined that the evidence was relevant to Taylor's primary defense of whether M.R. consented to the sex.

[¶29.]        In determining whether other act evidence is relevant, "[T]he threshold inquiry . . . is whether that evidence is probative of a material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 686, 108 S. Ct. 1496, 1499, 99 L. Ed. 2d 771 (1988). We have held that "[o]ther acts evidence is admissible in rape cases to negate the defense of consent[.]" *State v. Waugh*, 2011 S.D. 71, ¶ 17, 805 N.W.2d 480, 484. "When [an] appellant claims innocence . . . by a mitigating factor, namely, consent, he thus begets the establishment of intent as a material issue in the crime of rape." *State v. White*, 538 N.W.2d 237, 243 (S.D. 1995).

[¶30.]        Here, Taylor did not dispute that he had sexual intercourse with M.R. Instead, his core defense was that M.R. had consented. Taylor requested, and the circuit court gave, the following instruction to the jury:

> An act is not a crime when committed or omitted under an ignorance or mistake of fact which disproves any criminal intent. When a person honestly and reasonably believes certain facts, and acts or fails to act based upon a belief of those facts, which, if true, would not result in the commission of a crime, the person is not guilty.

As such, Taylor's intent and belief as to whether M.R. was consenting to the sex acts were material issues in the case.[2]

[¶31.] The other act evidence involved two separate instances where Taylor was alleged to have had sexual intercourse with young female acquaintances who later reported to law enforcement that the sexual intercourse was non-consensual. The circuit court did not abuse its discretion in finding the prior sexual assault allegations relevant to the issue of consent, Taylor's intent, and his common plan or scheme.[3] *See White*, 538 N.W.2d at 244 ("If a rapist's method of operation is calculated to create the appearance of consent by the victim, similar acts evidence may be admitted to negate the defense of consent.").

[¶32.] Taylor argues that the other act evidence was too remote to be relevant. However, the prior acts all occurred less than four years before the rape of M.R. In *State v. Most*, we allowed the admission of prior act evidence that occurred decades earlier because "the prior acts were substantially similar in several respects" and negated the claim of accident. 2012 S.D. 46, ¶ 18, 815 N.W.2d 560,

---

2. Additionally, Taylor was charged with attempted second-degree rape, a specific intent crime. *See State v. Hart*, 1996 S.D. 17, ¶ 13, 544 N.W.2d 206, 209 (stating that attempted second-degree rape is a specific intent crime, requiring a specific intent "to accomplish forced or coercive sexual penetration"). Proof of similar acts may be particularly relevant to crimes where the State has the burden to prove specific intent. *White*, 538 N.W.2d at 244.

3. The circuit court also held that the prior act evidence was relevant to show Taylor's motive. The relevance of this evidence to motive is less clear. *See Lassiter*, 2005 S.D. 8, ¶ 21, 692 N.W.2d at 177 (discussing factual situations where "[e]vidence of a prior crime may demonstrate a defendant's motive to commit a crime").

565. The prior acts here were not too remote given the similarities of the encounters and their relevance to the issue of consent.

[¶33.] The circuit court also weighed the probative value of this evidence against the prejudicial impact under SDCL 19-19-403. The court acknowledged that the evidence was prejudicial to Taylor, but determined the probative value was not substantially outweighed by the danger of unfair prejudice. "Upon a trial court's determination that the proffered evidence is relevant, the balance tips emphatically in favor of admission unless the dangers set out in Rule 403 substantially outweigh probative value." *Lassiter*, 2005 S.D. 8, ¶ 15, 692 N.W.2d at 176. "Damage to the defendant's position is no basis for exclusion; the harm must come not from prejudice, but from 'unfair prejudice.'" *State v. Janklow*, 2005 S.D. 25, ¶ 38, 693 N.W.2d 685, 698. Given the probative value of the other act evidence, we cannot say that the circuit court abused its discretion in permitting the State to introduce this evidence at trial.

[¶34.] Taylor further argues that the circuit court abused its discretion when it permitted P.R.'s "surprise testimony" about Taylor allegedly raping P.R. in his vehicle. However, Taylor did not object to this evidence or otherwise move to strike the evidence at the time P.R. testified.[4] Taylor has failed to show error by the circuit court concerning the unnoticed other act evidence.

---

4. Taylor does not ask us to review this claim on plain error review. Even if we were to do so, the record does not support that the error was plain or otherwise affected a substantial right. *State v. McMillen*, 2019 S.D. 40, 931 N.W.2d 725. Defense counsel initially elicited the evidence on cross-examination in an apparent attempt to undercut P.R.'s claim that the sex acts with Taylor in her dorm room were non-consensual. Further, we "have

(continued . . .)

>    *2.      Whether the admission of the other act evidence violated*
>    *Taylor's constitutional rights under the Double Jeopardy*
>    *and Due Process Clauses.*

[¶35.]      Taylor contends that under the Double Jeopardy Clause, the State was collaterally estopped from relitigating P.R.'s case to the jury because a prior jury had already found him not guilty of the charge.  He also argues that forcing him to relitigate the rape allegations violated due process because it was fundamentally unfair.  Alleged violations of a defendant's constitutional rights are reviewed de novo.  *State v. King*, 2014 S.D. 19, ¶ 4, 845 N.W.2d 908, 910.

[¶36.]      In discussing whether P.R.'s testimony violated the Double Jeopardy Clause, Taylor and the State both cite the United States Supreme Court decision in *Dowling v. United States*, 493 U.S. 342, 110 S. Ct. 668, 107 L. Ed. 2d 708 (1990).  In *Dowling*, the Court considered whether the admission of other act evidence for which there was a prior acquittal violates the Double Jeopardy Clause.  The Court initially recognized "that an acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof."  *Id.* at 349, 110 S. Ct. at 672.  The Court then analyzed the differing standards of proof when admitting 404(b) evidence versus determining someone's guilt.  The Court distinguished the two standards by holding that "in the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the

---

(. . . continued)

   permitted the State to introduce otherwise inadmissible evidence when a
   criminal defendant's trial strategy has 'opened the door' to the evidence."
   *State v. Letcher*, 1996 S.D. 88, ¶ 25, 552 N.W.2d 402, 406.  *See also State v.
   Burtzlaff*, 493 N.W.2d 1, 5-6 (S.D. 1992) (permitting the State the right to
   respond when defense counsel "opened the door").

actor." *Id.* at 346, 110 S. Ct. at 670. Thus, the prior acquittal of the charge on proof beyond a reasonable doubt "did not determine the ultimate issue in the present case[,]" and the prosecution was not collaterally estopped from admitting the other act evidence. *Id.* at 348, 110 S. Ct. at 671.

[¶37.]    *Dowling* further determined that Double Jeopardy was inapplicable because the defendant "did not demonstrate that his acquittal in his first trial represented a jury determination that he was not one of the men" who committed the alleged offense. *Id.* at 350, 110 S. Ct. at 673. "The acquittal did not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt." *Id.* at 349, 110 S. Ct. at 672-73 (citation omitted). "Because a jury might *reasonably conclude* that [defendant committed the offense], even if it did not believe *beyond a reasonable doubt* that [the defendant] committed the crimes charged at the first trial, the collateral-estoppel component of the Double Jeopardy Clause is inapposite." *Id.* at 348-49, 110 S. Ct. at 672 (emphasis added).

[¶38.]    *Dowling* also rejected the defendant's claim that such evidence violates fundamental fairness under the Due Process Clause. *Id.* at 352-53, 110 S. Ct. at 674-75. The Court held that judges "are to determine only whether the action complained of . . . violates those fundamental conceptions of justice which lie at the base of our civil and political institutions, and which define the community's sense of fair play and decency." *Id.* at 353, 110 S. Ct. at 675 (internal quotations marks and citations omitted). The Court determined that the Rules of Evidence were adequate to consider the admissibility of the evidence and declined "to use the Due

Process Clause as a device for extending the double jeopardy protection to cases where it otherwise would not extend." *Id.* at 354, 110 S. Ct. at 174.

[¶39.]     Applying *Dowling*, the State was not collaterally estopped from offering evidence of P.R.'s alleged rape, nor did the admission of this evidence violate fundamental fairness. The circuit court applied well-established rules of evidence and properly instructed the jury that, before considering the other acts, the jury must first determine if a preponderance of the evidence established that the defendant committed the other acts. *See Thomas*, 2019 S.D. 1, ¶ 22, 922 N.W.2d at 16. Taylor extensively cross-examined P.R. concerning the alleged sexual assault and the prior acquittal. The jury "remained free to assess the truthfulness and the significance of [the alleged victim's] testimony, and the petitioner had the opportunity to refute it." *Dowling*, 493 U.S. at 353, 110 S. Ct. at 675. *See also People v. Wallen*, 996 P.2d 182, 185 (Colo. App. 1999) (upholding the admission of a prior sexual assault charge where the defendant had raised a similar consent defense, as the jury could consider the prior act under the preponderance of the evidence standard).

> 3.     *Whether the circuit court abused its discretion when it denied Taylor's motions for a mistrial.*

[¶40.]     Taylor argues the court abused its discretion when it denied his motion for a mistrial based on what he characterizes as "witness tampering" by A.F. involving the testimony of Fitcher. During her testimony, A.F. stated on direct examination that Taylor had kissed her at the hotel room, and Taylor extensively cross-examined her as to whether this had occurred; primarily because A.F. had not stated this fact to the grand jury. A.F. also testified that she had not told Fitcher

about being kissed by Taylor. Fitcher testified after A.F. and stated that he had observed Taylor and A.F. kiss in the hotel room. However, on cross-examination, Fitcher admitted that he did not actually see Taylor kiss A.F. Instead Fitcher claimed that A.F. had told him this occurred. During cross-examination, Taylor suggested that A.F. and Fitcher had talked about this testimony, but Fitcher denied A.F. had told him what to say. After Fitcher's testimony, Taylor asked for a mistrial. Taylor claimed that A.F. had told Fitcher to testify about the kiss when she and Fitcher were in the hallway together outside the courtroom immediately before Fitcher's testimony.[5] The circuit court denied the motion for a mistrial.

[¶41.]        We review the denial of a motion for mistrial for an abuse of discretion and will only overturn upon a showing that an error has caused actual prejudice to the defendant. *State v. Kryger*, 2018 S.D. 13, ¶ 33, 907 N.W.2d 800, 812. Although not prefaced as such, Taylor's claim of "witness tampering" was essentially an argument that the court's sequestration order had been violated. To establish prejudice where a witness sequestration order has been violated, it must be

---

5.        After the jury returned a verdict, Taylor renewed his motion for a mistrial on this issue and also moved for a mistrial for the first time concerning the unnoticed 404(b) evidence. On appeal, Taylor also raises the circuit court's denial of his post-verdict motion for a mistrial on the unnoticed 404(b) evidence. We decline to review the motion for a mistrial with respect to the unnoticed 404(b) evidence because Taylor failed to timely move for a mistrial on this issue prior to the jury's verdict.

"A court may declare a mistrial before the jury returns a verdict but, after a verdict has been returned, the trial is complete. If the motion is not made before the verdict, the party seeking a new trial has waived the mistrial issue." 75B Am. Jur. 2d *Trial* § 1408. Taylor did not move for a new trial after the verdict pursuant to SDCL 23A-29-1. Further, as discussed above, Taylor has failed to show an error or prejudice concerning the unnoticed 404(b) evidence that Taylor elicited from M.R.

established that "the witness'[s] testimony has changed or been influenced by what [they] heard from other witnesses." *State v. Randle*, 2018 S.D. 61, ¶ 21, 916 N.W.2d 461, 466. The circuit court found there was insufficient evidence that A.F. and Fitcher had discussed the kiss in the hallway before Fitcher took the stand, or that A.F. influenced Fitcher's testimony. We agree. In any event, whether Taylor had kissed A.F. was an issue of minimal significance to the charges Taylor faced at trial. Therefore, Taylor has failed to make any showing that he was prejudiced concerning Fitcher's testimony. The court did not abuse its discretion when it denied Taylor's motion for a mistrial.

> 4. *Whether the circuit court erred when it denied Taylor's motion for a judgment of acquittal.*

[¶42.] Taylor contends the circuit court erred in denying his motion for a judgment of acquittal. The denial of a motion for a judgment of acquittal is reviewed de novo. *State v. Quist*, 2018 S.D. 30, ¶ 13, 910 N.W.2d 900, 904. "When conducting our review, we determine whether the evidence was sufficient to sustain the conviction." *Stone*, 2019 S.D. 18, ¶ 38, 925 N.W.2d at 500. "In measuring the sufficiency of the evidence, we ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Most*, 2012 S.D. 46, ¶ 29, 815 N.W.2d at 568. "If the evidence, including circumstantial evidence and reasonable inferences drawn therefrom sustains a reasonable theory of guilt, a guilty verdict will not be set aside." *Stone*, 2019 S.D. 18, ¶ 38, 925 N.W.2d at 500.

[¶43.] At trial, the jury heard from the victim M.R., the investigating officer, and the nurse who examined M.R. at the hospital. In her testimony, M.R. provided

specific details about the sexual assault and her efforts to resist Taylor. Sufficient evidence exists in the record to support the conviction.

> 5. *Whether the circuit court's admission of forensic laboratory reports by affidavit under SDCL 23-3-19.3 resulted in prejudicial error.*

[¶44.] Taylor claims the admission of the DNA testing reports from P.R.'s and T.B.'s cases violated his Sixth Amendment right to confront and cross-examine witnesses against him because the two forensic analysts did not testify at trial. "The Sixth Amendment's Confrontation Clause confers upon the accused, '[i]n all criminal prosecutions, . . . the right . . . to be confronted with the witnesses against him.'" *Bullcoming v. New Mexico*, 564 U.S. 647, 658, 131 S. Ct. 2705, 2713, 180 L. Ed. 2d 610 (citation omitted). We review this alleged violation of Taylor's constitutional right de novo. *State v. Medicine Eagle*, 2013 S.D. 60, ¶ 27, 835 N.W.2d 886, 896.

[¶45.] Taylor relies on the balancing test from *State v. Beck*, 2000 S.D. 141, 619 N.W.2d 247, to support his claims. However, *Beck* was decided before the United States Supreme Court's decisions in *Bullcoming* and *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 and no longer controls the issue before the Court.

[¶46.] *Bullcoming* considered whether "a forensic laboratory report containing a testimonial certification, made in order to prove a fact at a criminal trial" could be introduced through "an analyst who did not sign the certification or personally perform . . . the test . . . ." 564 U.S. at 657, 131 S. Ct. at 2713. The New Mexico Supreme Court held that the admission of the report did not violate the

defendant's Sixth Amendment right to confront witnesses because the results were calculated by a machine, and merely transcribed by the non-testifying analysts. *Id.* The Court disagreed.

[¶47.] The Court held "[a]n analyst's certification prepared in connection with a criminal investigation or prosecution . . . is 'testimonial,' and therefore within the compass of the Confrontation Clause." *Id.* at 658-59, 131 S. Ct. at 2712 (citing *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 321-24, 129 S. Ct. 2527, 2537-40, 174 L. Ed. 2d 314 (2009)). No matter how reliable a piece of evidence may be, there is no "forensic evidence" exception to the Confrontation Clause. *Id.* The Court stated:

> [T]he comparative reliability of an analyst's testimonial report drawn from machine-produced data does not overcome the Sixth Amendment bar. This Court settled in *Crawford* that the "obviou[s] reliab[ility]" of a testimonial statement does not dispense with the Confrontation Clause. (Clause "commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing [the evidence] in the crucible of cross-examination"). Accordingly, the analysts who write reports that the prosecution introduces must be made available for confrontation even if they possess "the scientific acumen of Mme. Curie and the veracity of Mother Teresa."

*Id.* at 661, 131 S. Ct. at 2715 (citations omitted).

[¶48.] Therefore, the circuit court erred by admitting the lab reports under SDCL 23-3-19.3 without affording Taylor the opportunity to cross-examine the analysts who conducted the testing and authored the reports. However, we must also consider whether the error was harmless. *Id.* at 668 n.11, 131 S. Ct. at 2719 n.11 ("express[ing] no view on whether the Confrontation Clause error in this case

was harmless" and holding that "nothing in this opinion impedes a harmless-error inquiry on remand").

[¶49.]     "When a defendant has shown his constitutional right to confrontation has been violated, he is entitled to a new trial unless the improperly admitted evidence constitutes harmless error." *State v. Richmond,* 2019 S.D. 62, ¶ 35, 935 N.W.2d 792, 802. "An otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *State v. Podzimek*, 2019 S.D. 43, ¶ 15, 932 N.W.2d 141, 146 (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S. Ct. 1431, 1436, 89 L. Ed. 2d 674 (1986)). We consider many factors when determining whether an error is harmless such as the testimony of the witnesses, whether the evidence is cumulative, the presence or absence of corroborating or contradicting evidence on the material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case. *Id.*

[¶50.]     In Taylor's case, "a full review of the record reveals a host of factors that show that any alleged error committed by the circuit court in admitting [the lab reports] was harmless beyond a reasonable doubt." *Podzimek*, 2019 S.D. 43, ¶ 16, 932 N.W.2d at 146. The State offered the lab reports solely to corroborate the other act evidence of P.R. and T.B., specifically, that it was Taylor who had sexual intercourse with them; allegations that Taylor did not appear to dispute. In fact, as to P.R., Taylor's cross-examination of P.R. tried to suggest that P.R. and Taylor had a consensual sexual encounter, much like the defense Taylor raises in this case. As

to T.B., Taylor did not challenge T.B.'s testimony about the alleged sexual intercourse.[6]

[¶51.] In any event, the DNA tests speak only to the question of whether sexual intercourse with the two other act witnesses occurred, not whether it was consensual. Because consent was the central issue in this case, the testimony from the other alleged victims was material to the issue of Taylor's mistake of fact defense, his criminal intent, and to show a common plan or scheme. Finally, the State's overall case against Taylor was strong regardless of whether the lab reports at issue had been admitted into evidence. "[W]hen considered in light of the evidence submitted at trial, the circuit court's admission of [the lab reports], though erroneous, was harmless." *Richmond*, 2019 S.D. 62, ¶ 43, 935 N.W.2d at 804.[7]

6. *Whether Taylor's sentence violates the Eighth Amendment.*

[¶52.] Taylor contends that his sentence is grossly disproportionate to the offenses and is therefore unconstitutional under the Eighth Amendment. "[W]hen the question presented is whether a challenged sentence is cruel and unusual in

---

6. Instead of cross-examining T.B., Taylor used information from the DNA report to cross-examine the investigating officer in T.B.'s case to suggest, without objection from the State, that T.B. had engaged in other recent sexual behavior aside from Taylor. Defense counsel elicited testimony from the officer that DNA of a third, unknown contributor had been found in T.B.'s underwear, and the officer believed the charges against Taylor relating to the alleged sexual assault of T.B. were ultimately dismissed based, at least in part, upon these DNA results.

7. Taylor asserts that cumulative errors by the circuit court violated his constitutional right to a fair trial. "The cumulative effect of errors by the trial court may support a finding by the reviewing court of a denial of the constitutional right to a fair trial." *State v. Davi*, 504 N.W.2d 844, 857 (S.D. 1993). However, Taylor has failed to demonstrate any error that was prejudicial to him, either on its own or on a cumulative basis.

violation of the Eighth Amendment, we conduct a de novo review." *State v. Chipps*, 2016 S.D. 8, ¶ 31, 874 N.W.2d 475, 486.

[¶53.]	"The Eighth Amendment to the U.S. Constitution, which was extended to the states through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'" *Id.* ¶ 32. In reviewing a sentence challenged under the Eighth Amendment, we must determine "whether the sentence imposed is grossly disproportionate to its corresponding offense." *State v. Yeager*, 2019 S.D. 12, ¶ 4, 925 N.W.2d 105, 108. In doing so, we first "look to the gravity of the offense and the harshness of the penalty." *Chipps*, 2016 S.D. 8, ¶ 38, 874 N.W.2d at 488. Such a comparison "rarely leads to an inference of gross disproportionality and typically marks the end of our review." *Id.* However, should the penalty imposed appear to be grossly disproportionate to the gravity of the offense, we next "compare the sentence to those 'imposed on other criminals in the same jurisdiction' as well as those 'imposed for commission of the same crime in other jurisdictions.'" *Id.* (quoting *Solem v. Helm*, 463 U.S. 277, 291, 103 S. Ct. 3001, 3010, 77 L. Ed. 2d 637).

[¶54.]	Taylor was convicted of second-degree rape under SDCL 22-22-1. We have held that "[r]ape is a heinous crime . . . without a doubt deserving of serious punishment." *Yeager*, 2019 S.D. 12, ¶ 6, 925 N.W.2d at 109 (analyzing child rape). The crime is often violent because "it normally involves force, or the threat of force or intimidation, to overcome the will and the capacity of the victim to resist." *Id.* Along with physical injury, it "can also inflict mental and psychological damage." *Id.* There may be public injury as well, because rape "undermines the community's

sense of security." For these reasons, "the gravity of [rape] is comparatively high when weighed against other criminal acts." *Id.*

[¶55.] "In judging the gravity of an offense, a court may also consider certain past conduct of the defendant" in sentencing enhancement cases. *Chipps*, 2016 S.D. 8, ¶ 36, 874 N.W.2d at 488. After Taylor's conviction, he admitted to two prior felony convictions under the habitual offender statute in SDCL 22-7-7. Because of the habitual offender enhancement, Taylor faced a potential life sentence on the conviction for second-degree rape. "[I]f the sentence is enhanced because of the offender's recidivism, then the gravity of his past offenses also contributes to the gravity of the present offense." *Id.*

[¶56.] The circuit court's imposition of a 50-year sentence, with 20 years suspended, was well within the maximum sentence boundaries that Taylor faced. "[A] sentence within the statutory maximum generally will not be disturbed on appeal." *State v. Talla*, 2017 S.D. 34, ¶ 10, 897 N.W.2d 351, 354. Given the record before the circuit court, we conclude that Taylor has failed to show his sentence was grossly disproportionate. "Accordingly, no further review of [Taylor's] challenge on Eighth Amendment grounds is warranted." *Yeager*, 2019 S.D. 12, ¶ 10, 925 N.W.2d at 110.

[¶57.] We affirm.

[¶58.] GILBERTSON, Chief Justice, and KERN, SALTER and DEVANEY, Justices, concur.