#29410-a-SPM
**2022 S.D. 12**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

   v.

CARL LEROY NELSON,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE CAMELA THEELER
Judge

* * * *

JASON R. RAVNSBORG
Attorney General

JOHN STROHMAN
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff and
                                        appellee.


MARK KADI of
Minnehaha County Office
   of the Public Advocate
Sioux Falls, South Dakota               Attorneys for defendant
                                        and appellant.

* * * *

CONSIDERED ON BRIEFS
AUGUST 23, 2021
OPINION FILED **02/16/22**

#29410

MYREN, Justice

[¶1.]    A jury convicted Carl Nelson of driving under the influence (DUI), abuse of or cruelty to a minor, reckless driving, and other offenses. He appeals his convictions, arguing that the circuit court erroneously denied his motions for judgment of acquittal on all counts, erroneously denied his motion for a mistrial, and erroneously instructed the jury on his right to refuse a blood draw. We affirm.

**Facts and Procedural History**

[¶2.]    At 8:05 p.m. on October 28, 2019, a woman called 911. She reported that Carl Nelson, the father of her six-week-old child, was driving a black Acura under the influence of alcohol with the infant in the backseat. The woman claimed Nelson was en route to his father's house and requested that officers meet Nelson at the house and remove the infant from his care. She informed dispatch that she witnessed Nelson drinking earlier that evening, that he had been in his vehicle earlier, and that she saw him swerving while driving.

[¶3.]    Officer Jason Meyer responded to the dispatch call. Within ten to fifteen seconds of arriving at a possible intercept point, he observed the vehicle approaching. He testified that "the vehicle was traveling at an extremely high rate of speed." Based on his experience and training, he estimated the vehicle was traveling at 70-miles-per-hour in a 35-mile-per-hour speed zone. Officer Meyer radioed that he saw the vehicle speeding in the direction of the house. Due to the angle of his patrol car and the suspect vehicle's speed, he could not initiate a traffic stop.

[¶4.]     Officer Paul Frerichs and Officer Carlos Puente had also responded to the dispatch call and were waiting, in their respective patrol cars, for Nelson to arrive at the house. While waiting, Officer Frerichs heard Officer Meyer's message over the radio and witnessed Nelson's vehicle pull into the driveway within approximately thirty seconds of the message. Officer Frerichs testified that the distance from Officer Meyer's location to the house was about ten to fifteen blocks and that he did not observe Nelson commit any traffic violations as he approached the house and stopped. After parking in the driveway, Nelson turned off the engine and exited the car. He quickly moved toward the house despite Officer Frerichs's requests to stop. Officer Frerichs grabbed Nelson's arm before he could enter the house, to which Nelson protested that he had not done anything.

[¶5.]     The officers pulled Nelson toward their patrol cars and handcuffed him. Nelson continued to exclaim that he did nothing wrong. He informed the officers that there was a baby in his vehicle and asked the officers to get his father from the house. Officer Meyer asked Nelson if he had been drinking. Nelson responded that he had drunk a little bit earlier that evening. The officers requested that he perform field-sobriety tests. Nelson refused, saying he wanted his father to take the infant before the officers did anything with him. Nelson also refused a preliminary breath test. During the interaction, Nelson repeatedly denied driving 70-miles-per-hour in the 35-mile-per-hour speed zone.

[¶6.]     After Nelson requested an attorney, the officers placed him under arrest. During the search incident to arrest, an officer found the Acura's keys in Nelson's pocket. Officer Meyer then provided Nelson with the DUI advisement and

requested a sample of Nelson's blood. Nelson refused to provide a sample. The officers testified that they smelled an odor of alcohol on Nelson, and Officer Frerichs testified that Nelson had bloodshot eyes and slurred speech.

[¶7.]     While two officers placed Nelson in the patrol car, a third officer removed the infant from the vehicle and brought the infant inside the house. The temperature outside was 32 degrees. After the infant was removed, Officer Meyer searched Nelson's car and observed a glass pipe containing burnt residue smelling like marijuana in the center console; a case containing another glass pipe and a bag containing marijuana on the front seat floorboard; and a can of malt liquor outside the vehicle.

[¶8.]     After the officers placed Nelson in the patrol car, he asked an officer if his baby was inside the house with his father. When the officer confirmed that the infant was inside, Nelson responded that all he cared about was his baby's safety. During Nelson's transport to the police station, he repeatedly asked if the officers had proof that he was speeding and intoxicated.

[¶9.]     A magistrate judge authorized a search warrant for the withdrawal of Nelson's blood. The blood draw occurred at 9:44 p.m., approximately one hour and ten minutes after Officer Meyer witnessed Nelson driving. The blood sample revealed a .114 percent blood-alcohol content (BAC) and was positive for Carboxy THC.[1]

---

1.    According to the State's expert, the body breaks down THC in stages to remove the substance. Carboxy THC is the second stage.

[¶10.]     Based on the incident, the State charged Nelson by complaint. He was subsequently indicted by a grand jury for: (1) abuse of or cruelty to a minor (SDCL 26-10-1); (2) DUI with a BAC of .08 percent or higher (SDCL 32-23-1(1)); (3) DUI for driving under the influence of an alcoholic beverage, marijuana, or any controlled drug or substance (SDCL 32-23-1(2)); (4) possession of a revoked or canceled driver's license (SDCL 32-12-67); (5) possession of marijuana (SDCL 22-42-6); (6) reckless driving (SDCL 32-24-1); (7) driving while license is revoked (SDCL 32-12-65(1)); and (8) use or possession of drug paraphernalia (SDCL 22-42A-3).[2] Nelson pleaded not guilty to all counts. The State later filed a part II habitual offender information, alleging Nelson had committed three prior felony offenses: third-degree burglary in 2003, possession of a controlled substance in 2006, and possession of a controlled substance in 2011.

[¶11.]     Nelson's jury trial began on June 22, 2020. At trial, the State played the 911 call that was the impetus for the investigation and presented three arrest videos. The State also called as witnesses the officers present at the scene and various forensic scientists. To support the State's contention that Nelson was speeding, Officer Meyer testified that he had been a radar-lidar instructor since 2016[3] and that vehicle-speed estimation was a part of his training. He said that before officers stop a vehicle, they first observe it, estimate a speed, and then

2.     An additional count—failure to maintain financial responsibility (SDCL 32-35-113 to -114)—was dismissed prior to trial.

3.     Officer Meyer explained that radar and lidar are different pieces of equipment for judging speed. "[A] radar gun [ ] uses doppler radar principles to judge the speed of a vehicle. A lidar uses a laser beam to determine [the] speed of a vehicle."

activate their equipment to confirm the speed. He claimed that he could not use his radar or lidar to obtain Nelson's speed because Nelson arrived before he had set up his equipment and his patrol car was at an angle that was not conducive for the equipment. Officer Meyer also testified that the infant was in the vehicle's backseat in an improperly secured car seat. He claimed the car seat was improperly secured based on the manufacturer's instructions and the seat belt being "strung over the top of both the car seat and the base." During cross-examination, he acknowledged that he had not read the car seat manufacturer's directions. On redirect examination, he clarified that the car seats that he had experience with were secured by running the seat belt through the car seat's base.

[¶12.] The State called Cody Geffre, a forensic chemist at the State Health Lab, who the court qualified as an expert in the analysis of blood-alcohol content. Geffre testified that his testing of Nelson's blood sample revealed a BAC of .114 percent. He explained that the body absorbs alcohol over time and that individuals' absorption rates could be affected by when they had their last drink and the type of alcohol they consumed. He noted that in a social-drinking situation, a person's BAC reaches its peak about thirty minutes after their last drink. He described that in situations where a person is drinking large amounts of alcohol in a short period of time, a bolus-drinking situation, the person's BAC peaks around forty-five minutes to an hour after the person's last drink. He testified that alcohol is eliminated from the body for a person of Nelson's stature at a rate of .015 percent per hour on average. Based upon Nelson's stature, Geffre testified that it would take "approximately five standard drinks" to reach a .114 percent BAC at the time of his

blood draw. The State then asked if Geffre could arrive at Nelson's BAC when he was driving based upon the known information. Geffre responded, "Yes." He testified that Nelson's BAC would have been approximately .132 percent while driving, assuming Nelson was in the post-absorptive phase. To assume Nelson was in this phase would give Nelson the benefit of the doubt. However, Geffre testified that even with the benefit of this assumption, if Nelson drank an entire can of malt liquor right before the officers arrested him, his body would have absorbed the alcohol by the time of the blood draw.

[¶13.]    During cross-examination, Geffre admitted that he did not know if Nelson was involved in a social-drinking or a bolus-drinking situation, and, as a result, he could not tell exactly how quickly Nelson's body absorbed the alcohol. He also testified that he did not know what type of alcohol, how much alcohol, or when Nelson drank the alcohol the evening of the arrest. Geffre stated that he had to assume Nelson was in the post-absorptive phase to arrive at Nelson's BAC being .132 percent while driving. He noted that assumptions could "probably" be made to put Nelson below a .08 percent BAC while driving.

[¶14.]    On redirect, the State began by stating, "[Geffre], we don't have to make assumptions about when he had been drinking. Evidence was presented earlier that he was observed drinking about an hour before the 911 call had come in, and that call came in at 8:05, and so around seven p.m.?" Nelson's counsel objected to the question, claiming the State was stating facts not in evidence. The court held a bench conference off the record. Afterward, the State revised its

question and, without objection, asked a series of hypothetical questions involving Nelson drinking at 7 p.m.

[¶15.] After the State rested, Nelson moved for a mistrial, arguing that the State's comment during Geffre's testimony coupled with the State's hypotheticals involving Nelson drinking at 7 p.m. created an incurable prejudice. Nelson asserted a plethora of arguments, including that: (1) the State did not offer any evidence that Nelson's last drink occurred at 7 p.m.; (2) the State's hypotheticals must involve questions regarding the facts in evidence; (3) the State's questions amounted to vouching for the credibility of the evidence the State's attorney was offering; and (4) he was precluded from confronting a witness in violation of his right to due process. He further argued a curative instruction was insufficient to cure the prejudice. In response, the State asserted that the hypotheticals were based on evidence from the 911 call, in which the caller reported having seen Nelson drinking earlier that evening. The State argued that Nelson's vouching argument is inapplicable because it did not claim that the caller was credible. The State acknowledged that offering the timeline of events was a mistake based on evidence it thought had come in. The State asserted that during the off-the-record bench conference, the circuit court asked Nelson's counsel if the State could pose the question as a hypothetical and indicated that Nelson's counsel shrugged and requested a curative instruction, which the court granted. The State further argued that there was ample evidence in the record, without the disputed testimony, to establish Nelson's intoxication. The circuit court recounted its recollection of the proceeding and then denied Nelson's request for a mistrial. It determined that the facts in evidence tended to

prove Nelson's intoxication, and the hypothetical questions did not warrant a mistrial.

[¶16.] Nelson then moved for judgment of acquittal on count 1 (abuse of or cruelty to a minor); count 2 (DUI with a BAC of .08 percent or higher); count 3 (DUI for driving under the influence of an alcoholic beverage, marijuana, or any controlled drug or substance); and count 4 (reckless driving).[4] Nelson argued that for DUI count 2, the State failed to establish that his BAC was .08 percent or higher while driving because Geffre's testimony was based upon assumptions. For DUI count 3, Nelson argued that the State failed to present evidence that Nelson was driving erratically because the speeding evidence was disputed, and the odor of alcohol was insufficient to establish intoxication. For the reckless driving count 4, Nelson disputed Officer Meyer's testimony that Nelson was driving 70-miles-per-hour and claimed the State failed to prove that he was driving recklessly. Nelson argued that there was no evidence of abuse or cruelty toward the minor without the DUI or reckless driving offenses. The court denied the motions, determining the jury could reasonably find Nelson guilty of each count.

[¶17.] The court and the parties then began finalizing the jury instructions. Regarding Nelson's refusal to consent to the blood draw, Nelson proposed criminal pattern jury instruction 3-10-6.[5] Instead, the court accepted the State's proposed

---

4.  Nelson also unsuccessfully moved for judgment of acquittal on count 8 (possession of drug paraphernalia).

5.  Criminal pattern jury instruction 3-10-6 provides:

(continued . . .)

instruction based on criminal pattern jury instruction 3-10-7.[6] The court stated

that the selected instruction was based on SDCL 32-23-10.1 and *State v. Stanley*,

2017 S.D. 32, 896 N.W.2d 669. The parties agreed on a curative instruction to

address the State's questions to Geffre, which read: "The jury must disregard the

prosecutor's statements regarding the time the Defendant allegedly began drinking

and any conclusions derived from such evidence. Statements of counsel are not

evidence."[7]

[¶18.]     After the jury instructions were settled, Nelson rested without

presenting evidence. During the State's closing argument, it stated that Geffre

---

(. . . continued)

> Evidence has been submitted that the defendant refused to submit to a test of blood. The law does not require any presumption from the refusal to submit to the test. Every person arrested for the offense of driving while under the influence is entitled to refuse to submit to a test of bodily substances.

6.     Criminal pattern jury instruction 3-10-7 provides:

> Evidence has been submitted that the defendant refused to submit to a test of his blood to determine the amount of alcohol by weight in the defendant's blood. The refusal to submit is not sufficient, by itself, to establish guilt of the defendant. It is a fact which if proved, may be considered by you in light of all other proved facts in deciding whether the defendant is guilty or not guilty of the crime of driving while under the influence of an alcoholic beverage and drugs. The weight, if any, to which the refusal is entitled and whether the conduct shows a consciousness of guilt are matters for your determination.

7.     The court also read a preliminary jury instruction, stating: "Certain things are not evidence. Statements, arguments, questions and comments made by the attorneys during the trial are not evidence . . . . Testimony I strike from the record, or tell you to disregard, is not evidence and must not be considered."

estimated Nelson's BAC was .132 percent while driving but did not reference

Nelson allegedly drinking at 7 p.m. While discussing Nelson driving under the

influence, the State noted that Nelson's refusal was not the "end-all and be-all of

the case, but it is something" the jury could consider and noted it was within

Nelson's right to refuse to consent to the blood draw. During Nelson's closing

argument, he pointed to Geffre's assumptions used to conclude that Nelson's BAC

was over .08 percent while driving. He also commented:

> [T]he [State] made a statement that we knew when [Nelson] had
> been drinking, and then [the State] proceeded to question [its]
> chemist and use a hypothetical time to try to extrapolate what
> [Nelson's] alcohol content would have been in his system. But
> remember, please, the State's statements are not evidence . . . .
> There was no evidence presented about when [Nelson] drank or
> what he drank because the State didn't call the witness that
> could have given you that information.

[¶19.] After deliberations, the jury returned guilty verdicts on all counts.

Nelson admitted to the part II information allegations, which enhanced the

maximum penalty for the abuse of or cruelty to a minor conviction (class 3 felony) to

that imposed for a class 1 felony. At sentencing, the circuit court stated it was

sentencing Nelson for count 2, DUI with a BAC over .08 percent. The court

sentenced Nelson to the following: fifteen years in the penitentiary with nine years

suspended for abuse of or cruelty to a minor; a suspended sentence of thirty days in

jail for DUI (counts 2 and 3); a suspended sentence of thirty days in jail for

possession of a revoked, altered or fictitious license; a suspended sentence of thirty

days in jail for possession of marijuana; a suspended sentence of thirty days in jail

for reckless driving; a suspended sentence of thirty days in jail for driving while

license is revoked; and a suspended sentence of ten days in jail for possession or use

of drug paraphernalia. The sentences were to run concurrent to each other and to another case for which Nelson was already serving time.

[¶20.] Nelson appeals, raising three issues which we restate as follows:

    1.    Whether the circuit court erred by denying Nelson's motions for judgment of acquittal.

    2.    Whether the circuit court abused its discretion by denying Nelson's motion for mistrial.

    3.    Whether the circuit court erroneously instructed the jury regarding the blood test refusal evidence.

## Analysis and Decision

### *1.    Whether the circuit court erred by denying Nelson's motions for judgment of acquittal.*

[¶21.] "Denial of a motion for judgment of acquittal is reviewed de novo." *State v. Ware*, 2020 S.D. 20, ¶ 12, 942 N.W.2d 269, 272 (citations omitted). We consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Snodgrass*, 2020 S.D. 66, ¶ 51, 951 N.W.2d 792, 808 (citation omitted). "[W]e accept the evidence and the most favorable inferences that can be fairly drawn from it that support the verdict." *Id.* (citation omitted). "We do not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence on appeal." *State v. Carter*, 2009 S.D. 65, ¶ 44, 771 N.W.2d 329, 342 (citation omitted).

[¶22.] Nelson does not dispute the guilty verdicts for possession of a revoked license (count 4), possession of marijuana (count 5), driving with a revoked license (count 7), or possession of drug paraphernalia (count 8). However, he claims the

court erred in denying his motion for judgment of acquittal on his DUI (counts 2 and 3), reckless driving (count 6), and abuse of or cruelty to a minor (count 1) convictions because he claims that insufficient evidence supported those verdicts.

### a.    Driving Under the Influence (Counts 2 and 3)

[¶23.]    Nelson argues the State failed to present sufficient evidence to permit the jury to extrapolate Nelson's BAC at the point he was driving.  He claims Geffre's testimony only provided an exact BAC for when the medical professional *took* the test, opposed to when he was *driving*.  He also argues that Geffre conceded that he used assumptions, rather than known facts, to estimate Nelson's BAC while driving.  Specifically, he claims Geffre did not know whether Nelson was in a social-drinking setting, how quickly Nelson's body absorbed alcohol, what Nelson drank, when he drank, and how much he drank.  He also notes that Geffre testified that applying assumptions differently could probably result in a BAC below .08 percent.  As a result, he argues Geffre's expert testimony was insufficient because it was based on conjecture and possibilities.

[¶24.]    Nelson was found guilty of violating SDCL 32-23-1(1) and (2), which provide:

> No person may drive or be in actual physical control of any vehicle while:
>
> (1)  There is 0.08 percent or more by weight of alcohol in that person's blood as shown by chemical analysis of that person's breath, blood, or other bodily substance;
>
> (2)  Under the influence of an alcoholic beverage, marijuana, or any controlled drug or substance not obtained pursuant to a valid prescription, or any combination of an alcoholic beverage, marijuana, or such controlled drug or substance[.]

Nelson disputes whether sufficient evidence established that, while he was driving, his BAC was .08 percent or more. To do this, Nelson attacks Geffre's testimony regarding extrapolation.

[¶25.] In *State v. Fode*, under the prior version of our state's DUI statute, we addressed a similar issue regarding whether the admissibility of expert extrapolation testimony offered by the State. 452 N.W.2d 779, 781 (S.D. 1990). In *Fode*, the defendant argued the expert's opinion regarding extrapolation lacked foundation because the expert did not know the type of alcohol the defendant consumed, when the defendant consumed his last beverage, and when the defendant had last eaten. *Id.* The expert had based his opinion regarding the defendant's BAC while driving on the defendant's body weight, the time between the blood withdrawal and the arrest, and the assumption that the defendant's body had yet to absorb one or two drinks. *Id.* We determined that "for the purpose of an expert opinion on extrapolation certain facts can be assumed, even though there is no specific evidence" and held the circuit court properly admitted the expert's testimony. *Id.* at 781–82. We concluded that the State presented sufficient evidence to support extrapolation. *Id.* at 782.

[¶26.] Here, the State submitted into evidence the blood test results indicating that Nelson's BAC at the time of the withdrawal was .114 percent. Geffre then described the body's process for absorbing alcohol and the rate at which the body eliminates alcohol. He then applied these processes to Nelson's height, weight, the time between when Nelson was last seen driving and the withdrawal, and the assumption that Nelson was in the post-absorptive phase, and concluded

that Nelson's BAC was approximately .132 percent while driving. Under the holding in *Fode*, to reach his extrapolation opinions, Geffre was permitted to assume certain facts about when and how much alcohol Nelson consumed. *See, e.g.*, *State v. Yuel*, 2013 S.D. 84, ¶¶ 19–22, 840 N.W.2d 680, 687–88.

[¶27.]     Nelson contends Geffre's opinion was mere conjecture due to Geffre testifying that assumptions could probably be made to result in a BAC below .08 percent. "[A]ll that must be shown is that [an] expert's testimony rests upon 'good grounds, based on what is known.' Any other deficiencies in an expert's opinion or qualifications can be tested through the adversary process at trial." *State v. Lemler*, 2009 S.D. 86, ¶ 34, 774 N.W.2d 272, 285 (citations omitted); *see generally State v. McDonald*, 421 N.W.2d 492, 493–94 (S.D. 1988). Geffre based his testimony on the available evidence and provided a reasoned explanation for how he arrived at his opinion. Because the testimony had sufficient foundation, the question of intoxication then became an issue for the jury to weigh.

[¶28.]     In viewing the evidence in a light most favorable to the verdict, the circuit court did not err in determining that a rational trier of fact could have found beyond a reasonable doubt that Nelson had a BAC of .08 percent or higher. Beyond Geffre's testimony, the State presented evidence of the 911 call reporting Nelson was drinking earlier and swerving while driving, testimony that Nelson admitted that he drank earlier that evening, the officers' testimony that Nelson smelled of alcohol, one officer's testimony that Nelson had bloodshot eyes, and multiple videos of Nelson's arrest.

### b. Reckless Driving (Count 6)

[¶29.]    Nelson argues that the State failed to establish that he was driving recklessly because no testimony showed that he committed a traffic offense.  He claims that Officer Meyer's speeding allegation was speculative because it was unsupported by a video or a radar gun.  He also contends that he did not endanger any vehicles or pedestrians with his driving.

[¶30.]    SDCL 32-24-1 provides:

> Any person who drives any vehicle upon a highway . . . carelessly and heedlessly in disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, is guilty of reckless driving.

Nelson did not raise foundation or speculation objections at trial during Officer Meyer's testimony regarding speeding.  However, he now argues that Officer Meyer's estimation was baseless.  We view the issue as one implicating only the sufficiency of the evidence and not the admissibility of Officer Meyer's testimony.

[¶31.]    Officer Meyer testified that he learned to estimate the speed of vehicles as part of his radar-lidar training and explained that before an officer deploys the radar or lidar equipment, they must first estimate the vehicle's speed.  *See, e.g.*, *City of Vermillion v. Williams*, 84 S.D. 589, 593, 174 N.W.2d 331, 333 (1970) (stating, "people who have had experience in driving cars and observing the speed thereof are competent to testify in regard to the speed of motor vehicles").  We do not "pass on the credibility of witnesses[ ] or weigh the evidence." *State v. Mulligan*, 2007 S.D. 67, ¶ 7, 736 N.W.2d 808, 813 (citations omitted).  The jury could properly consider Officer Meyer's speed estimation.

[¶32.]    "[R]eckless driving only involves a more culpable degree of negligence than the negligence involved in careless driving." *State v. Tammi*, 520 N.W.2d 619, 623 (S.D. 1994). The State had to establish that Nelson drove his vehicle (1) "carelessly and heedlessly in disregard of the rights or safety of others" or (2) "without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property[.]" SDCL 32-24-1. Based on the evidence presented at trial, a rational trier of fact could have found that: Nelson was traveling twice the legal speed limit, Officer Meyer was unable to catch up to Nelson's vehicle, Nelson traveled roughly ten blocks within a short time, and Nelson was driving while intoxicated. This evidence was sufficient to support a finding that Nelson was driving "carelessly and heedlessly in disregard of the rights or safety of others[.]" *Id.* Nelson also endangered the life of his infant child by driving intoxicated, at twice the legal limit, with the infant improperly secured in the back seat. This was sufficient evidence to justify a rational trier of fact to have found that he was driving "without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger *any person*[.]" *Id.* (emphasis added). The court did not err in denying Nelson's motion for judgment of acquittal on reckless driving.

### c.    *Abuse of or Cruelty to a Minor (Count 1)*

[¶33.]    Based on his belief that the State had failed to establish reckless driving or driving under the influence, Nelson contends there was no evidence to establish abuse of or cruelty to a minor. He argues that the infant's exposure to the cold was insufficient evidence because the officers left the infant in the vehicle while

they arrested Nelson. He also argues that Officer Meyer's testimony regarding the infant being improperly secured in the car seat was based on information—the car seat manufacturer's instructions—unknown to Officer Meyer.

[¶34.] "Any person who abuses, exposes, tortures, torments, or cruelly punishes a minor in a manner which does not constitute aggravated assault" violates SDCL 26-10-1. The State presented evidence that Nelson was driving while intoxicated, was traveling 70-miles-per-hour in a 35-mile-per-hour zone, and had an infant improperly secured in a car seat in the vehicle. We have previously explained that the term "exposes" in SDCL 26-10-1 "includes those things or scenarios . . . that 'subject [a child] to needless risk.'" *State v. Myers*, 2014 S.D. 88, ¶ 8, 857 N.W.2d 597, 600 (citation omitted). The State presented sufficient evidence so that a rational trier of fact could have found that Nelson violated SDCL 26-10-1 by exposing his child to needless risk. Any issue with the weight of this testimony was for the jury to decide. *See Mulligan*, 2007 S.D. 67, ¶ 7, 736 N.W.2d at 813. The court did not err in denying the motion for judgment of acquittal regarding abuse of or cruelty to a minor.

### 2. *Whether the circuit court erred by denying Nelson's motion for mistrial.*

[¶35.] "We review the denial of a motion for mistrial for an abuse of discretion[.]" *State v. Taylor*, 2020 S.D. 48, ¶ 41, 948 N.W.2d 342, 355 (citation omitted). An abuse of discretion is "a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable." *State v. Kvasnicka*, 2013 S.D. 25, ¶ 17, 829 N.W.2d 123, 127–28 (citations omitted). "For purposes of determining whether there are

grounds for a mistrial there must be error 'which, in all probability, produced some effect upon the jury's verdict and is harmful to the substantial rights of the party assigning it.'" *State v. Stone*, 2019 S.D. 18, ¶ 34, 925 N.W.2d 488, 500 (citations omitted).

[¶36.] Nelson argues the circuit court erred by denying his motion for mistrial because the State's questioning of Geffre involved facts not in evidence and constituted prosecutorial vouching. He claims the alleged vouching violated his due process, fair trial, and confrontation clause rights. Nelson contends that the circuit court's curative instruction was insufficient because Geffre's testimony provided the footing for the jury to determine that Nelson's BAC was .08 percent or higher while driving, making the prejudice incurable.

[¶37.] The State's at-issue comment provided:

> [Geffre], we don't have to make assumptions about when [Nelson] had been drinking. Evidence was presented earlier that he was observed drinking about an hour before the 911 call had come in, and that call came in at 8:05, and so around seven p.m.?

### a. Vouching

[¶38.] "[P]rejudice can result from the prosecution placing the prestige of the government behind the witness and implying that the prosecutor knows what the truth is and thereby assures its revelation." *State v. Westerfield*, 1997 S.D. 100, ¶ 12, 567 N.W.2d 863, 867 (citation omitted). If a prosecutor conveys this message explicitly or implicitly, they are improperly vouching. *See Jenner v. Leapley*, 521 N.W.2d 422, 427 (S.D. 1994). Here, the State was not suggesting that it "had some superior knowledge or criterion, not available to the jury, to establish the witness

was testifying truthfully." *Lodermeier v. Class*, 1996 S.D. 134, ¶ 17, 555 N.W.2d 618, 624. Instead, the State was attempting to draw the jury's attention to a fact—Nelson was drinking at 7 p.m.—that it incorrectly believed was in evidence. This was not a case of vouching.

### b.  Facts not in evidence and hypotheticals involving those facts

[¶39.]      The relevant objection, which Nelson raised, was that the State's question presented facts not admitted in evidence. The State conceded that "offering the timeline was [ ] done out of mistake" based on an erroneous belief that the evidence had been received. Therefore, the State erred by saying definitively that the jury had heard evidence that Nelson was drinking an hour before the 911 call, around 7 p.m.

[¶40.]      Nevertheless, the posed hypotheticals, presented without objection, have an evidentiary basis and are not a statement of fact like the State's original question.[8] Nelson is correct that "[a] hypothetical question should be framed in

---

8.     The State posed the following hypotheticals:

State:     Now, and so theoretically, if there were information that the Defendant had been seen drinking at approximately seven p.m., um, how does that change your opinion, if at all, about the BAC being around—we'll say a [.]13; is that fair, at the time of driving?

Geffre:    Um, the alcohol that had been drank—that had been consumed in that time, would have been absorbed, and so, yes, it would be consistent with the .13.

State:     Okay. And what about that if we're going on the assumption that he is below a .08 at the time of driving, theoretically him

                                                                              (continued . . .)

accordance with some theory which the evidence reasonably lends support."

*Kramer v. Sioux Transit, Inc.*, 85 S.D. 232, 237, 180 N.W.2d 468, 471 (1970).  The

State presented sufficient evidence permitting hypothetical questions based on the

premise that Nelson was drinking before 8 p.m.  The jury heard the redacted 911

call, which the caller placed around 8:05 p.m.  In the call, dispatch asked how the

caller knew Nelson was intoxicated, and the caller responded that she saw him

drinking earlier and swerving while driving.  Then when the officers arrested

Nelson around 8:30 p.m., Nelson confirmed that he had been drinking a bit earlier.

Based on this evidence, it was not illogical for the State to pose a hypothetical

involving Nelson drinking at 7 p.m.  The State was careful to theoretically pose the

7 p.m. time and kept the hypotheticals within Geffre's area of expertise—the body's

rate of absorbing alcohol.  "Much must be left to the sound judicial discretion of the

trial court in determining how far counsel must limit his [or her] questions so the

---

(. . . continued)

> having been seen drinking around seven p.m., would that be consistent then with a .114 blood test?

Geffre: It [sic] could be, yes.

State: How so?

Geffre: Um, depending on how high the level was at the peak, it will take time to eliminate at that constant rate.  And so whatever was drank in that hour-time period before would have been absorbed into the blood, and the body would be eliminating in that post-absorptive phase.

State: And so it would have been possible that if he were drinking at around seven p.m., he would have been below a .08 at the time of the draw and then back up to a .114 at the time of testing?

Geffre: Not without additional alcohol being consumed.

opinion will be of assistance to the jury." *Id.* at 239, 180 N.W.2d at 472 (citation omitted). The circuit court acted within its discretion by permitting the hypotheticals.

### c.    *Prejudice*

[¶41.]    A motion for mistrial "will not be granted unless there is a showing of actual prejudice to the defendant." *State v. Johnson*, 2001 S.D. 80, ¶ 9, 630 N.W.2d 79, 82 (citation omitted). Even though the State erred by offering facts not in evidence, the circuit court corrected the error by providing the jury a curative instruction that Nelson's counsel drafted. We "presume that juries understand and abide by curative instructions." *State v. Dillon*, 2010 S.D. 72, ¶ 28, 788 N.W.2d 360, 369 (citations omitted) (holding that a court's curative instruction remedied an expert's improper vouching, and the court did not err by denying motion for mistrial). Further, during the bench conference, the court asked if Nelson's counsel agreed to the State offering the hypotheticals, and Nelson's counsel shrugged in response. Nelson's counsel then did not object to the hypotheticals. Following the hypotheticals, Nelson cross-examined Geffre and drew to the jury's attention that Geffre's opinion testimony was based on assumptions. The curative instruction and Nelson's cross-examination cured any prejudice. The State also presented other evidence establishing that Nelson was drinking earlier that evening—the 911 call and the video showing Nelson's admission that he drank earlier. Based upon these facts, the circuit court did not err in concluding that Nelson failed to establish prejudice warranting a mistrial. The circuit court did not abuse its discretion by denying the motion for mistrial.

### 3. Whether the circuit court erroneously instructed the jury regarding the blood test refusal evidence.

[¶42.] "We review a trial court's denial of a jury instruction for an abuse of discretion." *State v. Liaw*, 2016 S.D. 31, ¶ 18, 878 N.W.2d 97, 102 (citation omitted). However, "a court has no discretion to give incorrect or misleading instructions, and to do so prejudicially constitutes reversible error." *Id.* (citation omitted). We consider jury instructions as a whole, and "[i]f they 'correctly state the law and inform the jury, they are sufficient.'" *State v. Kryger*, 2018 S.D. 13, ¶ 41, 907 N.W.2d 800, 814 (citations omitted). We review whether the jury instruction correctly states the law de novo. *State v. Waloke*, 2013 S.D. 55, ¶ 28, 835 N.W.2d 105, 113.

[¶43.] Nelson claims the circuit court misapplied the law by providing the State's requested jury instruction instead of his proposed instruction, and in doing so, the court misapplied *State v. Stanley*, 2017 S.D. 32, 896 N.W.2d 669. He also contends that the presented instruction permitted the jury to consider the exercise of his constitutional right to withhold consent as proof of his guilt. He claims a combined Fourth and Fifth Amendment protection prohibits the jury from considering this evidence. Nelson finally contends that the court's selected instruction failed to include language stating that Nelson held the right to refuse consent, and it unnecessarily emphasized Nelson's withholding of consent over other pieces of evidence.

[¶44.] The disputed instruction provided:

> Evidence has been submitted that the defendant refused to submit to a test of his blood to determine the amount of alcohol by weight in the defendant's blood. The refusal to submit is not

> sufficient, by itself, to establish guilt of the defendant. It is a fact which if proved, may be considered by you in light of all other proved facts in deciding whether the defendant is guilty or not guilty of the crime of driving while under the influence of an alcoholic beverage and drugs. The weight, if any, to which the refusal is entitled and whether the conduct shows a consciousness of guilt are matters for your determination.

South Dakota Pattern Jury Instructions (Criminal) 3-10-7.

[¶45.] The withdrawal of an individual's blood implicates the Fourth Amendment protection against unreasonable searches and seizures. *See Missouri v. McNeely*, 569 U.S. 141, 148, 133 S. Ct. 1552, 1558, 185 L. Ed. 2d 696 (2013). For an officer to obtain permission for withdrawal of an individual's blood, they must obtain a warrant from a neutral and detached magistrate, or an exception to the warrant requirement must apply. *Id.* This court has previously rejected the contention that asking an arrestee to provide a urine sample is either a search or seizure. *Stanley*, 2017 S.D. 32, ¶ 17, 896 N.W.2d at 676–77. Thus, any claim that the admission of a refusal to provide consent implicates a Fourth Amendment violation is misplaced.

[¶46.] The United States Supreme Court has rejected the notion that the use of a refusal as evidence against the individual refusing to consent violates the Fifth Amendment. *South Dakota v. Neville*, 459 U.S. 553, 564, 103 S. Ct. 916, 923, 74 L. Ed. 2d 748 (1983). An individual's refusal to provide consent to a blood draw, "after a police officer has lawfully requested it, is not an act coerced by the officer, and thus is not protected by the privilege against self-incrimination[,]" and the State may use the refusal to take the test as evidence of guilt. *Id.* The Supreme Court has repeatedly referenced with approval state statutes that place evidentiary

consequences on individuals who refuse to consent to a blood withdrawal in a DUI prosecution. *See Birchfield v. North Dakota*, 579 U.S. 438, 136 S. Ct. 2160, 2185, 195 L. Ed. 2d 560 (2016) (stating prior decisions have "referred approvingly" to laws imposing "evidentiary consequences on motorists who refuse to comply"); *Mitchell v. Wisconsin*, 139 S. Ct. 2525, 2533, 204 L. Ed. 2d 1040 (2019); *McNeely*, 569 U.S. at 161, 133 S. Ct. at 1566.

[¶47.]       SDCL 32-23-10.1 provides: "If a person refuses to . . . allow the withdrawal of blood or other bodily substance for chemical analysis as provided in § 32-23-10, and that person subsequently stands trial for violation of § 32-23-1 or § 32-23-21, such refusal may be admissible into evidence at the trial."  Because the statute permits a court to admit the refusal into evidence, and neither this Court nor the United States Supreme Court has interpreted this to be a violation of a defendant's Fourth Amendment Rights, Fifth Amendment Rights, or a combination of those rights, the circuit court correctly instructed the jury on the current state of our law.

[¶48.]       Nelson also claims the instruction improperly emphasized one piece of evidence—Nelson's refusal—over other evidence.  Notably, while the State offered Nelson's refusal of the blood-alcohol test as evidence supporting that Nelson was under the influence of alcohol, the court also provided jury instruction 23, which referred to many other facts the jury could consider in making this determination. It provided:

> In determining whether or not the defendant was under the influence of an alcoholic beverage at the time of the alleged offense, you may take into consideration the appearance, acts and conduct of the defendant insofar as shown, whether or not

the defendant had been drinking an alcoholic beverage and, if so, the kind and amount thereof and the time of drinking with reference to the time of the alleged offense; the odor, if any, of an alcoholic beverage on the defendant's breath, the manner of driving and all the evidence, facts and circumstances in the case and, applying your judgment, you may determine whether the defendant drove a vehicle while under the influence of an alcoholic beverage.

[¶49.]     "We consider jury instructions as a whole[.]" *State v. Birdshead*, 2015 S.D. 77, ¶ 14, 871 N.W.2d 62, 70 (citation omitted) (quotation mark omitted).  The court instructed the jury on multiple factors to consider when determining if Nelson was under the influence.  And the at-issue jury instruction 25 provided the same, stating, "The refusal to submit *is not sufficient, by itself, to establish guilt of the defendant.  It is a fact which if proved, may* be considered by you *in light of all other proved facts*[.]"  (Emphasis added.)  Contrary to Nelson's contention, the court did not emphasize the State's position over his own; but rather, it provided that the jury was to determine "[t]he weight, if any, to which the refusal [wa]s entitled and whether the conduct show[ed] a consciousness of guilt[.]"  The circuit court properly instructed the jury on the factors it could weigh and instructed the jury to distribute weight amongst those factors.

[¶50.]     Next, Nelson contends the court's instruction should have included the language from his proposed instruction, stating that he had the right to refuse consent.  A defendant can withhold consent to a warrantless blood draw.  *See State v. Fierro*, 2014 S.D. 62, ¶¶ 23–24, 853 N.W.2d 235, 243; *Birchfield*, 136 S. Ct. at 2173.  However, SDCL 32-23-10.1 establishes evidentiary consequences that result from that decision.  Nelson argues that criminal pattern jury instruction 3-10-7 is

insufficient because it does not explicitly advise the jury that he has a right to refuse the requested blood draw. We disagree.

[¶51.]     It is true, of course, a defendant is not obligated to *consent* to a seizure of bodily substances. *See McNeely*, 569 U.S. at 159, 133 S. Ct. at 1565 ("We have never retreated . . . from our recognition that any compelled intrusion into the human body implicates significant, constitutionally protected privacy interests."). But where such a seizure is conducted pursuant to a search warrant or under circumstances constituting a recognized exception to the Fourth Amendment's warrant requirement, the defendant may not refuse to submit a sample. To suggest otherwise, as criminal pattern instruction 3-10-6 does, states the rule too broadly and does not accurately reflect the law. We concluded as much in *State v. Herrmann*, when we held that "within constitutional limits, a person can be forced to submit to a test of bodily fluids[.]" 2002 S.D. 119, ¶ 17, 652 N.W.2d 725, 730.

[¶52.]     Nothing in the instruction given suggests that an individual must consent to a blood draw, nor does its language preclude an argument by a defendant that he was operating within his right to refuse consent. Here, the State noted the same when it advised the jury during its closing argument that Nelson had the right to withhold his consent. The instructions, as a whole, adequately informed the jury as to how they could, or could not, consider the evidence of the refusal to consent to the blood draw, the possible inference that could be drawn, and the jury's role in assessing what weight, if any, to afford this evidence.

**Conclusion**

[¶53.] The circuit court did not err in denying Nelson's motions for judgment of acquittal. Although the prosecutor's comment stated facts not in evidence, the court provided a curative jury instruction and did not abuse its discretion by denying Nelson's motion for mistrial. Finally, the circuit court did not abuse its discretion in the manner in which it instructed the jury. We affirm.

[¶54.] JENSEN, Chief Justice, and KERN, SALTER, and DEVANEY, Justices, concur.